553 So.2d 309 (1989)
Guy Leonard PARKER, Appellant,
v.
Reonna T. PARKER, Appellee.
Nos. 89-1486, 89-1700.
District Court of Appeal of Florida, First District.
December 1, 1989.
*310 William Howard Laporte, Crestview, for appellant.
R. John Westberry, Pensacola, for appellee.
WILLIS, BEN C. (Ret.), Associate Judge
The parties appeal a final order modifying a final judgment of dissolution.[1]
In January 1987 the husband left Crestview, Florida with his daughter from a previous marriage and the parties' child, J.T.P., born April 1985, and moved about 95 miles away to Daphne, Alabama. In March 1987 he filed a petition for dissolution of marriage seeking, inter alia, custody of J.T.P. and the child with which the wife was pregnant. The wife did not appear at the hearing on the petition for dissolution and the court entered a default against her.
At the dissolution hearing the husband testified that he took J.T.P. and his daughter from his wife's parents' house, in which they temporarily lived, because his wife and his wife's family were involved in a religious cult. He testified extensively on the group's bizarre activities, such as extended fasting, and their requirements that he abstain from conjugal relations with his wife, give his house away, quit his job, and have no further contact with the outside world. Letters later written by the wife to the husband and his daughter in November 1987 acknowledged that she was under the influence of others and that she felt threatened by the others. The letters were apologetic and sought reconciliation.
In April 1987 the court dissolved the marriage and gave the husband primary residential custody of J.T.P. and the child the wife was carrying at the time of the judgment. The judgment also called for the parties to share parental responsibility for those children.
The now former wife gave birth to the parties' second child, J.R.P., April 19, 1987 at a birthing center. The former husband arrived shortly after birth and took the newborn into his custody.
In May 1988 the former wife filed a complaint for modification of child custody and prior to hearing she moved for and was granted visitation every other weekend. She testified that she stayed in her room at her mother's house for two months after giving birth suffering from the effects of a difficult child birth. She said the first time she learned where her former husband and children were was October 1987. Between that time and the time of hearing she said she drove to Daphne, Alabama several times to see her children but her former husband refused to let her see them and told her not to let them know she was their mother. It also appears in the record, from her testimony and that of the former husband, that she suffered emotional trauma *311 as a result of the pressures placed upon her by her now deceased father and terminally ill mother, and as a result of being separated from J.R.P. at birth and being repeatedly refused visitation.
In its modification order the court required the parties to share parental responsibility for the children and it gave custody to the former wife from May 1, 1989 until September 1, 1989 after which the former husband was to have custody, with custody to alternate every four months thereafter in the same fashion until J.T.P. became legally required to attend school. The order also provided for visitation by the parent out of custody every other weekend and certain holidays and occasions. It also stated that the former husband was to pay the wife's attorney's fees and it denied his petition for child support.
Shifting or rotating custody is presumptively not in the best interest of children. In the Interest of S.M.H., 531 So.2d 228 (Fla. 1st DCA 1988). "However, the best interest of the children is still the polestar and there may be special circumstances in individual cases which may justify rotating physical residence. Alexander v. Alexander, 473 So.2d 236 (Fla. 2d DCA 1985); Gerscovich v. Gerscovich, 406 So.2d 1150 (Fla. 5th DCA 1981)." S.M.H., 531 So.2d at 231.
Gerscovich outlined factors which courts have considered important in determining whether rotating custody is favorable to the children. Among those factors are (1) the children's ages, (2) the length of each period of custody, (3) the disruptive influences created by alternating custody including the distance that must be traveled, and also (4) the parents' attitude towards each other and how those attitudes affect the children.
The circumstances presented by this case do not lead us to the conclusion that the trial court abused its discretion in modifying the dissolution judgment to provide for rotating custody. The prolonged period that the children could not be with their natural mother and were apparently shielded from the knowledge of her existence, the relative proximity of the former husband's and wife's current homes, the ages of the children, and the provisional nature of the arrangement which terminates upon J.T.P. reaching school age, are among the supporting factors. Finding no abuse under the circumstances, we decline to disturb the judgment of the trial court on this issue. Compare Bienvenu v. Bienvenu, 380 So.2d 1164 (Fla. 3d DCA 1980) (where the children were 4 and 2 but the custody provision, which was reversed, called for 5 3/4 months with the father in New Orleans and 5 3/4 months with the mother in Miami).
The former wife asserts that in the original dissolution proceeding the trial court lacked subject matter jurisdiction over the parties' unborn child to determine custody of that child. Florida Rule of Civil Procedure 1.140(h)(2) states that the defense of lack of subject matter jurisdiction may be raised at any time. A legion of cases make it clear that the issue of subject matter jurisdiction may be considered by an appellate court even though raised for the first time on appeal. E.g., Bohlinger v. Higginbotham, 70 So.2d 911 (Fla. 1954); City of Miami v. Cosgrove, 516 So.2d 1125 (Fla. 3d DCA 1987). Though the former wife was free to raise the issue of whether the trial court had subject matter jurisdiction to award custody of an unborn for the first time on appeal had she appealed from the dissolution judgment, we do not construe the Rule to require our review of the issue in the context of an appeal from an order modifying custody after the time for appeal from the dissolution judgment has run.
The modification order is affirmed in all respects except the award of $1500 attorney's fees because the trial court did not set forth specific findings as to the factors it considered in arriving at that fee. Wilkins v. Wilkins, 546 So.2d 44 (Fla. 4th DCA 1989), quoting Shields v. Shields, 502 So.2d 1349, 1350 (Fla. 2d DCA 1987), held that Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985)
requires the trial court not only to determine the proper amount of attorney's fees by considering the hourly rate, the *312 number of hours reasonably expended in the case, and the appropriateness of the reduction or enhancement figures, but also to set forth specific findings as to these factors.
Although we find that the record contains sufficient evidence upon which the trial court could have based its award according to the criteria set forth in Rowe, the trial court erred in failing to set forth its specific findings.
Wilkins, 546 So.2d at 45-46 (citation omitted). The instant modification order suffers the same deficiency found in Wilkins et al.
AFFIRMED in part, REVERSED and REMANDED in part.
ERVIN and NIMMONS, JJ., concur.
NOTES
[1] The separate appeals by each the former husband and the former wife are consolidated and treated as an appeal by the former husband and cross appeal by the former wife.