604 So.2d 878 (1992)
In re the Marriage of Shirleen SULLIVAN, Appellant,
v.
William John SULLIVAN, Appellee.
No. 91-3981.
District Court of Appeal of Florida, First District.
August 21, 1992.
Rehearing Denied September 25, 1992.
*879 Robert Moeller, Cross City, for appellant.
No appearance by appellee.
WOLF, Judge.
Appellant challenges the trial court's decision to rotate physical custody of the minor child every two weeks until the child reaches school age. We affirm.
Rotation of residential custody of a child is presumptively not in the best interest of the child. In the Interest of S.M.H., 531 So.2d 228 (Fla. 1st DCA 1988). A trial court, however, may find special circumstances which justify rotating physical residence. Parker v. Parker, 553 So.2d 309 (Fla. 1st DCA 1989).
One of the factors to be considered is the parents' attitude toward each other and how these attitudes affect the children. Parker, supra at 311. In the instant case, the trial court considered the wife's failure to allow visitation with the husband, her original denial that the husband was the father, as well as her demeanor during the hearing. The trial court expressly found as follows:
[T]he child is at a young and impressionable age and given the hostility evident in the mother's attitude, demeanor and testimony, the court is concerned whether or not she will imbue the child with her attitude against the father. In addition, the child will not suffer school problems since that will not be a consideration for over four years. The court has considered the length of each period of custody and finds two weeks with one parent and two weeks with the other to be conducive to good bonding between both mother and father and does not find the length of time to be a hardship on either parent. The parties do not live very far apart and the father has agreed to be responsible for transportation of the minor child.
Under these circumstances, as in Parker, supra, we find that the trial court did not abuse its discretion in making its custody determination.
We affirm.
SHIVERS, J., concurs.
MINER, J., specially concurring with written opinion.
MINER, Judge, concurring specially.
I reluctantly concur in this affirmance because I have serious doubt that rotating physical custody every two weeks of the two year old child involved here is in the best interest of either the child or his parents. Yet, on the record before us, I cannot conclude that the trial court abused its discretion in ordering such a custody arrangement.
As Judge Wolf notes in his opinion, rotating custody is presumptively not in the best interest of the child, which consideration is of primary importance. See Frey v. Wagner, 433 So.2d 60 (Fla. 3rd DCA 1983); Elebash v. Elebash, 450 So.2d 1268 (Fla. 5th DCA 1984); In the Interest of S.M.H., a child, 531 So.2d 228 (Fla. 1st DCA 1988). However, in Parker v. Parker, 553 So.2d 309 (Fla. 1st DCA 1989), this court held that such custody rotation was permissible upon a trial court's finding of special circumstances after considering four important factors:
Among these factors are (1) the children's ages, (2) the length of each period of custody, (3) the disruptive influences created by alternating custody including the distance that must be traveled, and also (4) the parents attitude toward each other and how those attitudes affect the children.
Parker, 553 So.2d at 311. These factors are peculiar because the first three appear to address the practicality or feasibility of rotating custody vis-a-vis the degree of disruption that might be visited upon the *880 child. Thus, any findings involving these first three factors might make a particular rotating custody arrangement more or less detrimental, but these factors do not offer any reason why such an arrangement should be chosen in the first instance. Only the fourth factor seems to offer an actual reason for rotating custody.
Had the trial court neglected the fourth Parker factor and opted for rotating custody based only upon the first three factors, I would be of the view that special circumstances sufficient to overcome the presumption against rotating custody had not been demonstrated. However, the trial court seems to have relied most heavily upon the fourth Parker factor in finding that the mother's hostility towards the father made rotating custody desirable to prevent her from turning the child against the father. Additionally, this finding is supported by the mother's refusal to permit visitation and, more significantly, by the trial court's estimation of her "attitude, demeanor and testimony."
Although I am obliged to vote to affirm the trial court in this case, fourteen years experience presiding over family law matters at the trial level has persuaded me that, absent the most compelling of reasons, frequent shifting of physical custody of children, particularly toddlers, between parents not only serves to introduce an element of instability into the children's lives, but also heightens rather than reduces animosity between the parents. Thus, the long term relationship between children and the parents who are required by law to share responsibility for their upbringing is undermined from the start.
Almost sure to follow a custody order like the one on appeal are contempt hearings upon contempt hearings, not to mention modification petitions, as the parties give vent to their profoundly deepening frustrations and conflicts. If such should prove to be the case here and should the opportunity present itself, the trial court may wish to refer the parties to this dispute to mediation as provided for in Sec. 61.183(1), Florida Statutes. The rationale for encouraging mediation here would be to decrease the conflict in this custody dispute and to serve as a means of instructing the parents on their duties under shared parental responsibility as well as their duty to act in the best interests of the child. Mediation generally provides a forum where the parties can express their feelings without those feelings or their expression being held against them. Requiring the parties themselves to decide on an agreeable arrangement by which they will share responsibility for their son may well help preserve this most important long term relationship.