668 So.2d 668 (1996)
Richard Jennings MacCONNELL, Appellant,
v.
Starla K. CASCANTE, Appellee.
No. 94-2637.
District Court of Appeal of Florida, Fourth District.
February 28, 1996.
*669 Peggy Rowe-Linn of Peggy Rowe-Linn, P.A., and Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, for appellant.
Holly Davidson of DuBosar & Davidson, P.A., Boca Raton, for appellee.
STEVENSON, Judge.
This is an appeal from a final judgment on modification of child custody allowing the former wife to relocate to Costa Rica with the minor child on a part-time basis and setting up a rotating custody schedule between the U.S. and Costa Rica. We reverse and remand.
Pursuant to an amended final judgment of dissolution of marriage, former husband, Richard MacConnell and former wife, Starla Cascante, were awarded shared parental responsibility of their child, Crystal, who was born in May of 1989. The former wife was named as the primary residential parent and the husband was given frequent and liberal visitation. The amended final judgment enjoined both parties from moving Crystal's residence from Palm Beach County without the consent of the other parent or the court.
In October of 1993, the former husband filed a petition requesting modification of primary residential custody from the former wife to himself. The petition alleged that the mother was in a campaign to alienate Crystal from him, which included a move to Costa Rica. The former wife answered and counter-petitioned, seeking permission to move the minor child to Costa Rica. After an evidentiary hearing, the trial court entered the order which is the subject of this appeal. In that order, the trial court adopted a 24 month rotational custody arrangement that the parties had previously negotiated toward but had not agreed to. This order gave the parties shared parental responsibility of Crystal and designated each parent as the primary residential parent when Crystal is with that parent.
We agree with former husband that the trial court's order allowing the former wife to relocate with Crystal to Costa Rica is deficient because the court failed to specifically analyze the so-called Mize factors in the order itself. In Mize v. Mize, 621 So.2d 417 (Fla.1993), the supreme court set out six factors which must be considered in determining whether to permit the custodial parent to move. These six factors are:
1. Whether the move would be likely to improve the general quality of life for both the primary residential spouse and the children.
2. Whether defeating visitation is the actual motivation for the move.
3. Whether the custodial parent, once out of the jurisdiction, will be likely to comply with visitation arrangements.
4. Whether the substitute visitation will be adequate to foster a continuing meaningful relationship between the child or children and the noncustodial parent.
5. Whether the cost of transportation is financially affordable by one or both of the parents.
6. Whether the move is in the best interests of the child.
Id. at 420. Additionally, where the final judgment incorporates a prohibition against the relocation of the child, the parent with *670 primary residential responsibility must show a change of circumstances to justify the relocation. Id. Here, the former wife's remarriage and her new husband's newly acquired opportunity to manage an 80 acre coconut seed farm in Costa Rica unquestionably warrant a finding of changed circumstances.
Lastly, we note that the child will be rotating between living with the former wife in Costa Rica and the former husband in Florida.[1] While rotating custody arrangements are appropriate in certain cases, they are generally frowned upon and presumptively not in the best interests of the child. Langford v. Ortiz, 654 So.2d 1237 (Fla. 2d DCA 1995); Bienvenu v. Bienvenu, 380 So.2d 1164 (Fla. 3d DCA 1980). There are several factors that the court should analyze in determining whether rotational custody is in the best interests of the child including: (1) the age and maturity of the child; (2) whether the rotating custody arrangement takes into account the necessary divisions in a child's life, such as the school year; (3) whether the parents live near each other; and (4) the preferences of the child. Langford; Bienvenu. Since we have reversed the final judgment on other grounds which require that the entire custody issue be revisited, we do not decide whether the rotational agreement in the instant case is proper; instead, we simply direct the trial court, on remand, to consider the rotating custody arrangement in light of the appropriate factors and the presumption against it.
Accordingly, the final judgment of modification of custody is reversed and this cause remanded to the trial court for further proceedings consistent with this opinion. Additional testimony and evidence may be received at the discretion of the trial court.
REVERSED AND REMANDED.
STONE, J., concurs.
FARMER, J., dissents with opinion.
FARMER, Judge, dissenting.
I cannot believe that any reasonable judge would impose on this poor child the kind of "shared parental" custody required by the order we review today. It provides that a 7 year-old girl live half the year with her father here in Florida and with her mother in a remote part of Costa Rica during the remaining half. That by itself may not be categorically unreasonable but, as they say in Congress, the devil is in the details.
This child is required by the order to attend school in both the United States and in Costa Rica, so she ends up going to school year round.[2] She speaks little Spanish, and the evidence suggests that her lack of fluency will keep her back a year in the Costa Rican school. That school is 2½ hours away from the child's house. Her house consists of a one-room building with a bathroom, but no electricity or telephone. Yet the child has a history as an asthmatic who has previously required an electrically operated nebulizer in times of respiratory crisis. The house is also 7 hours away over unpaved roads from the nearest airport.
The purpose of this draconian custody order is to allow the mother, who was granted primary custody originally, to move to Costa Rica and there superintend a seed farm with her new husband. The concerns supporting the decision are described as allowing both parents to have primary custody of the child, while also serving the advancement of multiculturalism. With all due respect to my colleagues and the learned trial judge, I do not believe that the shoulders of this little 7 year-old child are broad enough to carry social policies so heavy, legal goals so complex.
*671 Moreover, I do not believe that anything in our law requires that she do so. The court expressly said in Mize v. Mize, 621 So.2d 417 (Fla.1993), that "[i]n all cases of this type, the best interest of the child clearly is the prime consideration." 621 So.2d at 420. Even allowing that the mother has a "well-intentioned reason and a founded belief that the relocation is best for that parent'sand, it follows, the child'swell-being, rather than from a vindictive desire to interfere with the visitation rights of the other parent,"[3] I cannot agree that it is in the child's best interests to live in this kind of divided custody. Nor does this decision find strong comfort in application of the 6 Mize factors:[4] it surely will not improve the general quality of life for this child, and there is likely to be little substitute visitation while she is in Costa Rica.
The effect is to require this child in her most tractable years to live half in one world and half in another, but as a stranger in both. I am confident that it is still in the best interest of a child to have stability in her early school years when her mind and personality are still a tabula rasa. The best interests of children require when their education is just at the brink that they have an anchor to at least one parent, to one place, to a culture, to a set of values. That best interests of this child should be primary, even at the cost of shared parental custody.
The kindest thing we can doand, I think, the legally correct thing to dois to return this case to the trial judge to pick one parent or the other, one world or the other, one school or the other.
NOTES
[1] The trial court's order contained a detailed schedule wherein Crystal would complete one "school year" in Costa Rica while with the mother and one "school year" in Florida with the father. During extended breaks (spring, summer, and etc.) and between the intervals of each school term, she would live with the other parent. We see no indication in the trial court's order that Crystal would be expected to attend school "year round" as suggested by the dissent.
[2] The school year in Costa Rica is apparently different from the school year in Florida. From my reading of the record, I infer that the effect is to make her a year-round student. If I am wrong in that inference, it is one less thing the child must endure from this order, but I would still vote to reverse it and require the court to choose one parent for primary custody.
[3] Quoted from Hill v. Hill, 548 So.2d 705, 707-08 (Fla. 3d DCA 1989), rev. denied, 560 So.2d 233 (Fla.1990) (Schwartz, J., concurring); see also Mize, 621 So.2d at 419-420.
[4] Mize, 621 So.2d at 420.