687 So.2d 48 (1997)
Kerry RUFFRIDGE, Appellant,
v.
Susan Blaisdell RUFFRIDGE, Appellee.
No. 96-1999.
District Court of Appeal of Florida, First District.
January 27, 1997.
*49 E. Jane Brehany of Myrick, Davis & Brehany, for Appellant.
Keith A. McIver, James L. Chase & Associates, P.A., for Appellee.
PADOVANO, Judge.
In this appeal and cross appeal we have for review the child custody and support provisions of a final judgment dissolving the marriage of the parties. Kerry Ruffridge, the husband, contends that the trial court abused its discretion by requiring him to pay child support. Susan Blaisdell Ruffridge, the wife, contends in the cross appeal that the trial court abused its discretion by ordering rotating custody of the children. We conclude that the evidence is insufficient to overcome the presumption against rotating child custody and therefore we reverse on the cross appeal. The matter of child support, which is now moot in the present appeal, can be reconsidered on remand when the trial court resolves the issues of custody and visitation.
The parties had been married for fourteen years at the time of their dissolution of marriage. They have two children, a twelve-year-old-girl, and a five-year-old boy. Ms. Ruffridge is employed as a Navy nurse in a career she has pursued throughout the marriage, and Mr. Ruffridge works part time remodeling houses. During the marriage, Mr. Ruffridge spent a large part of his time at home with the children. Each party requested shared parental responsibility of the children and each requested to be designated the primary residential parent.
On June 2, 1995, the parties appeared before the trial court for a hearing on the issues of temporary custody and support. The court deferred consideration of these issues until the start of the next school year. Meanwhile, the court directed that the children would live with one parent for six weeks and then with the other for six weeks. A second temporary hearing was held on August 8, 1995, and at the close of the proceedings on that day, the parties agreed to rotate custody of the children every week until the final hearing. The trial court approved the agreement and entered a temporary order rotating custody.
The parties each sought physical custody of the children in the final hearing on January 23, 1995. At the conclusion of the hearing, the trial court designated Ms. Ruffridge as the primary residential parent and ordered that the physical custody of the children be rotated between the parents weekly. Neither party had requested rotating custody and neither had presented evidence that it would be in the best interest of the children. Nevertheless, the trial court concluded that it could find "no reason to disturb the rotating physical custody arrangement" in the temporary order. The court reasoned that the children had not suffered any detriment from the existing weekly rotating physical custody arrangement and that they were well adjusted and had thrived under the agreement.
Having settled the custody issue, the trial court made certain findings concerning the income of the parties to resolve the issue of child support. According to the final judgment, Mr. Ruffridge earns a net income of $1,368.00 per month from his renovation work and Ms. Ruffridge earns a net income of $4,396.00 per month from her employment *50 as a nurse. Despite this disparity in earnings and the equal division of time with the children, the trial court ordered Mr. Ruffridge to pay $450 per month in child support to Ms. Ruffridge.
Trial courts have authority in family law cases to order or approve of plans for rotating child custody. However, the practice of alternating child custody between parents is not favored. Section 61.13, Florida Statutes, does not include rotating child custody among the appropriate methods of sharing parental responsibility. In the Interest of S.M.H., 531 So.2d 228 (Fla. 1st DCA 1988). On the contrary, the statute states in section 61.13(2)(b)(1) that each child should have a "primary residence," and explains in section 61.13(2)(b)(2)(a), that providing a primary residence is but one of the many parental responsibilities to be shared. Consequently, the Florida courts have recognized that rotating child custody is presumptively not in the best interest of the children. Parker v. Parker, 553 So.2d 309 (Fla. 1st DCA 1989); Chiafair v. Chiafair, 552 So.2d 248 (Fla. 1st DCA 1989).
It follows from this presumption that the trial court should adopt a plan of rotating custody only in an exceptional case in which it is shown to be in the best interest of the children. Sullivan v. Sullivan, 604 So.2d 878 (Fla. 1st DCA 1992). The factors that might be sufficient to overcome the presumption against rotating custody in a given case are: (1) the child is older and mature; (2) the child is not yet in school; (3) the parents live near each other; (4) the child prefers rotating custody; (5) rotation would not have a disruptive effect on the child; (6) the periods of time spent with each parent are reasonable; and (7) the periods of custody are related to divisions in the child's life, such as the school year. Langford v. Ortiz, 654 So.2d 1237 (Fla. 2d DCA 1995).
Of these seven factors identified in Langford, only one could possibly apply here. The parents live close to each other. This factor alone does not justify the trial court's decision requiring the children to move between the two homes every week. The close proximity of the homes might make the rotation less disruptive, but that does not equate to a showing that rotating custody is in the best interest of the children. All of the remaining factors suggest that a rotating custody arrangement is not in the best interest of the children.
Although the weekly rotation plan is fair to the parents in the sense that it allows them equal time, it was not shown to be fair to the children. One significant deficiency in the plan is that there was no evidence to show that it was based on a division of time in the lives of the children. Moreover, the frequency of the rotation in this case is likely to inhibit the development of a stable living environment. In contrast, most of the rotating custody plans approved by the courts provide for much longer periods of time with each parent. See, e.g., Alexander v. Alexander, 473 So.2d 236 (Fla. 2d DCA 1985) (six months); Gerscovich v. Gerscovich, 406 So.2d 1150 (Fla. 5th DCA 1981) (one year); Parker v. Parker, 553 So.2d 309 (Fla. 1st DCA 1989)(four months). These plans provide some degree of stability for the children, at least in the short term.
Mr. Ruffridge argues that there is evidence that the children had adapted well to the weekly rotating custody arrangement by the time of the final hearing. Thankfully, that is correct. However, it does not follow that a particular living arrangement is in the best interest of the children merely because the children have adapted to it. The trial court found that each parent was likely to allow frequent and unhampered contact with the other and that each was likely to encourage a close and continuing relationship between the children and the other parent. These findings lead us to conclude that there was no need to require the children to move in and out of separate houses.
For these reasons, we reverse the part of the final judgment that requires rotating child custody. Because our decision will require further consideration of the custody issue, we need not determine the correctness of the child support order. The trial court may reconsider the matter of child support in *51 light its determination of custody and visitation on remand.
Reversed.
JOANOS and WOLF, JJ., concur.