845 So.2d 976 (2003)
Stacey Renee CHAPMAN, Appellant,
v.
Norman Mitchell PREVATT, Appellee.
No. 4D02-2635.
District Court of Appeal of Florida, Fourth District.
May 21, 2003.
*978 Troy W. Klein of Troy W. Klein, P.A., West Palm Beach, for appellant.
No brief filed for appellee.
GROSS, J.
In this case, the circuit court allowed a mother to relocate to Colorado with her school-aged children, but imposed a custody arrangement where the children would switch back and forth from Colorado to Florida. Nothing in the record demonstrates that such a rotating custody arrangement is in the best interest of the children. We reverse.
Stacy Chapman and Norman Prevatt were divorced by a final judgment dated June 30, 1998. The parties have two minor children, Brooke, born November 17, 1991, and John, born March 30, 1994. At the time of the final judgment, the mother and the father lived in Okeechobee, Florida.
On March 20, 2000, the mother filed a petition for modification seeking to change the visitation schedule because she was living and working in Palm Beach County. On November 13, 2000 the father filed a counter petition for modification; he sought primary residential custody of the children, contending that the mother had failed to comply with the requirement of shared parenting and that she had denied him visitation.
On July 13, 2001, the mother filed an amended petition for modification requesting that she be allowed to relocate to Colorado with the children, following her remarriage on April 7, 2001. Her new husband was on active duty with the Air Force and was transferred to Colorado Springs.
A one-day trial occurred on August 8, 2001.
The mother acknowledged that the parties had agreed that the father would have visitation on Tuesdays and Thursdays, and every other weekend. She moved to West Palm Beach in late 1999, without the father's consent, because she had a good job opportunity. She enrolled the children in school in West Palm Beach in August, 2000, also against the father's wishes. After that time, the mother drove the children to and from Okeechobee to visit their father.
The mother testified that her new husband expected to be stationed in Colorado Springs for three years. The mother described various opportunities available for the children in Colorado, such as the Rocky Mountains, mountain waterfalls, a YMCA on the Air Force base, after-school programs and field trips, snow boarding and skiing, and college and professional sports teams. The mother believed that the children would benefit from these diverse opportunities, which were not available in Okeechobee.
*979 If allowed to relocate with the children, the mother planned to enroll in a community college near the military base, where tuition was offered at a 50% reduction for military spouses. She intended to take a year-long EKG and ultrasound program, expecting that her current pay would jump from $10 to $25 an hour.
After the mother moved with the children to West Palm Beach, she conceded that it was too difficult for the children to stay with their father during the week, because their school was over an hour away from Okeechobee. The children instead stayed with their father on alternate weekends.
The mother proposed a different visitation schedule if her relocation request were granted: to fly the children back to their father for holidays and school vacations, to provide for e-mail with visual camera communication, to give the father six weeks of summer visitation and an extended Christmas vacation, and to be flexible in allowing the children to travel and see their father at other times during the year.
The father testified that when his children were living in Okeechobee, they were with him every Tuesday and Thursday, and alternating weekends. The children were actively involved in the father's church most of the year. The father felt his relationship with his children would suffer if the children moved to Colorado, just as the relationship had suffered when the children moved to West Palm Beach. Once the children switched schools, the father was not as actively involved with their school and homework. The father made the decision to end the weekday/overnight visitation after trying the arrangement for a few weeks and realizing the travel was too burdensome on the children. He offered no testimony that he had ever visited his children on any weekdays since they moved to West Palm Beach and the twice-weekly overnight visitation had ended.
In the final judgment, the trial judge found that the move to Colorado would be likely to improve the general quality of life for the mother and her children (when they are living with her), that the mother's financial situation would greatly improve, and that there are a number of military benefits she and the children would enjoy. The court did not believe the quality of activities for the children available in Colorado supported relocation. The judge determined that the mother's relocation was not for the express purpose of defeating the father's visitation, given that her new husband was transferred to Colorado.
The trial court was concerned that neither parent would follow orders regarding visitation. The judge found that the mother has the financial resources to handle the costs of transportation to ensure that the children would have meaningful contact with the father if the relocation were granted.
The trial court ruled that there had been a substantial change in circumstances since dissolution; both parties had remarried [the father had remarried in August 2001, remaining in Okeechobee County], with the mother's new husband being stationed in Colorado and both parents were "totally incapable of being able to communicate with each other in a meaningful way that is best for these children." The court concluded that it was in the best interests of the children to modify the custodial arrangement.
The trial court's order of modification held that it was "in the minor children's best interests for the parties to rotate primary residence of the minor children on an annual basis." (emphasis added). The court set a schedule:

*980 1) For the 2001-02 school year, the children would reside with the mother out-of-state;
2) For the 2002-03 and 2003-04 school years, the children would reside with the father;
3) For the 2004-05 and 2005-06 school years, the children would reside with the mother;
4) For the 2006-07 school year, the children would reside with the father;
5) For the 2007-08 and 2008-09 school years, the children would reside with the mother;
6) For the final three years of high school, each child would be with their respective gender parent.
The non-residential parent would have the children for the Christmas and Easter school vacations, with an extended summer visitation only in the middle of the two-year rotation block, and with telephone or video Internet connection every Sunday afternoon and Tuesday evening. The residential parent was required to send a monthly one-page report to the other parent detailing the children's school performance, extracurricular activities, and any medical problems or doctor visits.
Under the modification order, if a residential parent failed to comply with the order requiring the delivery of the children for visitation or a custody change, the penalty to be assessed was a "consecutive forfeiture" of the next two visitations to which the non-residential parent was entitled. The trial court also held that such penalties would be "stacked," so that each time the residential parent failed to comply, the parent would lose two visitation periods for each violation; the court explained that a parent "might lose your visitation [and] might not see your children for two or three years under that pattern." (Emphasis added).
The modifications to the original final judgment were to remain in effect as long as the parties were more than sixty miles apart; if the distance between the parties became less, then the parties would return to the terms of the initial mediation agreement.
The mother moved for rehearing. She argued that neither party had requested rotating residential custody; had she known that such an arrangement were at issue, she would have produced an expert to testify against it. For the first time, the mother suggested a proposed relocation visitation schedule, giving the father one weekend each month, or any long weekend of every month, with eight weeks of summer visitation, pursuant to the Model Parenting Time Sharing Schedule for Palm Beach County.
The trial judge denied the motion for rehearing. His order added findings that he had inadvertently omitted from the original modification order. He observed that the relationship between the parties had greatly deteriorated after the final judgment of dissolution; that there was continued hostility between the parties after the dissolution; that the parties were incapable of communicating with each other in a meaningful way that was in the best interests of their children; and that the interaction between the parties in the past confirmed the need to change custody and visitation.
Responding to the mother's contention that the trial court lacked the authority to impose a rotating custodial arrangement when neither party had requested such relief, the trial court stated that because the father had sought modification of primary residential custody, the court had subject matter jurisdiction to "decide with which parent the children should reside." The trial court also noted that section 61.121, Florida Statutes (2000), gave it authority to enter the rotating custody arrangement.
*981 Addressing the rotating custody arrangement, the trial court wrote:
The Court in the case at bar specifically determined that given the level of hostile attitude between these parents, coupled with the distance the parents will now live apart, custody should be rotated in a manner that will assure the children have meaningful day-to-day relationships with both parents as they grow up. The rotation plan formulated by the Court was designated to lessen disruption in the children's lives by rotating custody on two year cycles at the end of a school year, and allow each child to be with the same sex parent in the later teen years.
The trial court abused its discretion in granting a modification of the mother's status as the primary custodial parent. It is well-settled that a trial court may not modify custody or visitation "unless the party moving for such modification demonstrates: (1) a substantial or material change in the circumstances of the parties since the entry of the custody and visitation order; and (2) that the welfare of the child will be promoted by a change in custody and visitation." Knipe v. Knipe, 840 So.2d 335, 339-40 (Fla. 4th DCA 2003) (citation omitted).
That parents do not get along with one another is not a substantial or material change in circumstances which, without more, justifies a change of custody. See Zediker v. Zediker, 444 So.2d 1034, 1036 (Fla. 1st DCA 1984) (noting that the "inability of two otherwise intelligent and rational adults to communicate before, during or after visitation" did not amount to a substantial or material change of circumstances "which would justify a change of custody") (emphasis in original); see also Newsom v. Newsom, 759 So.2d 718, 719-20 (Fla. 2d DCA 2000) (reversing trial court's modification of custody, despite "acrimonious relationship" between parents, as mother had demonstrated consistent attempt at co-parenting); cf. Knipe, 840 So.2d at 340 (affirming trial court's decision to increase visitation for non-residential parent where the parents' "gross misbehavior" and inability to communicate had detrimentally harmed the children).
Here, there was no evidence that the children were being harmed by the parents' treatment of each other. Testimony from both parents indicated the children were doing well in school, were involved in extracurricular activities, and were not exhibiting any signs of distress from their parents' behavior that would be atypical for two young children whose parents had been separated since they were toddlers.
The final judgment does not specify how the mother's actions were harmful to the children. Without such findings, there is no record support for the trial court's determination of a substantial change of circumstances sufficient to justify a change in residential custody. The mother's desire to relocate to Colorado, in the absence of other compelling circumstances, does not in and of itself support a change of custody. See Perez v. Perez, 767 So.2d 513, 517-18 (Fla. 3d DCA 2000).
It is the rotating custody arrangement that is most problematic. Section 61.121 states that "[t]he court may order rotating custody if the court finds that rotating custody will be in the best interest of the child."
However, case law has established that rotating custody is presumptively not in the best interest of children. See Mancuso v. Mancuso, 789 So.2d 1249, 1249-50 (Fla. 4th DCA 2001); Hosein v. Hosein, 785 So.2d 703, 704 (Fla. 4th DCA 2001); Bracken v. Bracken, 704 So.2d 746, 747 (Fla. 4th DCA 1998); MacConnell v. Cascante, 668 So.2d 668, 670 (Fla. 4th DCA *982 1996); Caraballo v. Hernandez, 623 So.2d 563, 564 (Fla. 4th DCA 1993). Nothing in section 61.121 detracts from the long-standing presumption frowning upon a rotating custody arrangement. See Mancuso, 789 So.2d at 1250; Mandell v. Mandell, 741 So.2d 617, 618 (Fla. 2d DCA 1999).[1]
This court has recognized that there are "special" or "appropriate" circumstances that may justify rotating custody. See Caraballo, 623 So.2d at 564; Bracken, 704 So.2d at 747. Such circumstances include: (1) the child's age and maturity; (2) whether the child is in school; (3) the proximity of the parents' residences; (4) the child's preferences; (5) the disruptive effect of the rotation on the child; (6) the reasonableness of the periods of time spent with each parent; (7) the relation of the periods of custody to divisions in the child's life, such as the school year; and (8) the parents' attitude toward each other, and how their attitudes might affect and be perceived by the children. Hosein, 785 So.2d at 704.
This is not just a case of rotating custody; it is one of geographical rotating custody, until the children reach the age of eighteen. A review of the case law establishes that in balancing what is in the best interest of a child, the child's need for stability and continuity generally outweighs a parent's interest in a schedule that provides for temporal equality in visitation.[2] Courts have recognized that a child's school can be a source of stability amidst the uncertainty of a divorce.
For example, this court in Caraballo reversed a rotating custody arrangement, where the parents lived three miles from each other, but in different school districts. We observed that "[r]equiring an eight year old child to switch schools yearly is clearly a disruptive influence indicating that rotating physical custody is not in the best interests of the child." 623 So.2d at 564; see also Pfeifer v. Pfeifer, 616 So.2d 1190, 1191 (Fla. 4th DCA 1993) (affirming rotating custody arrangement permitting each parent to have custody of child a portion of each week where both parents continued to reside in the same neighborhood after separation); Wilking v. Reiford, 582 So.2d 717, 719 (Fla. 5th DCA 1991) (reversing a yearly rotating custody arrangement where the parents lived in two different school districts, as it was not in the best interests of the child to be forced to switch schools, make new friends and readjust to a different curriculum at a different school); cf. Bracken, 704 So.2d at 747-48 (affirming a rotating custody arrangement until child reaches school age); Parker v. Parker, 553 So.2d 309, 311 (Fla. 1st DCA 1989) (allowing court to rotate custody until the child reached school age); Alexander v. Alexander, 473 So.2d 236, 237 (Fla. 2d DCA 1985) (same); Gerscovich v. Gerscovich, 406 So.2d 1150, 1153 (Fla. 5th DCA 1981) (affirming rotating custody arrangement where the "community is the same; schools are the same; friends no doubt may remain substantially the same; and visitation rights are not hampered by the change").
*983 The trial court imposed the rotating custody arrangement without the benefit of any expert testimony, and without the services of a guardian ad litem. Cf. Mandell, 741 So.2d at 617 (affirming rotating custody plan where trial court relied on expert's testimony); Alexander, 473 So.2d at 237 (concluding that special circumstances required for rotating custody were established by expert testimony). The parties presented no testimony that the children would benefit from the arrangement the court imposed. Neither party even requested it. Without any evidence demonstrating how the children would adjust to the rotating custody, there is no way for a court to evaluate whether there may be "special circumstances" that justify the arrangement.
Upon remand, the trial court shall consider the mother's relocation request in accordance with section 61.13(2)(d), Florida Statutes (2001). This section "imposes an intensely fact specific framework on the relocation decision, where the trial judge may base a decision on what is best for the child...." Kuntz v. Kuntz, 780 So.2d 1022, 1023 (Fla. 4th DCA 2001) (quoting Flint v. Fortson, 744 So.2d 1217, 1218 (Fla. 4th DCA 1999)).
Because it may arise on remand, we also address the trial court's remedy of forfeiting visitations to sanction a parent's failure to comply with the visitation schedule. The court's order imposes the sanction of lost visitations. The problem with such an automatic penalty is that "it may, in the absence of a finding that such a change is in the best interest of the children, penalize the children for the parent's contumacious conduct." LaLoggia-VonHegel v. VonHegel, 732 So.2d 1131, 1133 (Fla. 2d DCA 1999). See Pace v. Solomon, 715 So.2d 1155 (Fla. 5th DCA 1998) (holding that a transfer of custody as punishment is not an appropriate sanction for contempt); Moody v. Moody, 721 So.2d 731, 733 (Fla. 1st DCA 1998). Taking away visitations as a punishment is very different from awarding "make-up or additional visitation" to "redress the wrong to [a] parent and to effectuate compliance with the court's authority." LaLoggia-VonHegel, 732 So.2d at 1133.
Reversed and remanded.
POLEN, C.J., and KLEIN J., concur.
NOTES
[1] Section 61.121 was enacted in 1997. See Ch. 97-242, § 2, at 4436-37, Laws of Fla.
[2] See In re Marriage of Oros, 256 Ill.App.3d 167, 194 Ill.Dec. 604, 627 N.E.2d 1246, 1249 (1994) (reversing a joint custody order in which a young child was rotated every three months between his parents' residences in different cities; the court noted the confusion and emotional problems experienced by this young child during the three years he had been "subjected to a merry-go-round of changing preschools, doctors, playmates, households and environments"); Knutson v. Knutson, 639 N.W.2d 495, 502 (N.D.2002) (noting that "[i]t is not generally in the best interest of a child to be bandied back and forth between parents in a rotating physical custody arrangement").