29 So.3d 315 (2009)
Michael James COREY, Appellant,
v.
Erica Lynn COREY, Appellee.
No. 3D08-1461.
District Court of Appeal of Florida, Third District.
December 30, 2009.
*316 Fowler White Burnett and Kathy M. Klock and Greg A. Lewen, for appellant.
Simon, Schindler & Sandberg and Roger Schindler and Anthony V. Falzon, for appellee.
Before SHEPHERD and LAGOA, JJ., and SCHWARTZ, Senior Judge.
LAGOA, J.
In this dissolution action, Michael James Corey, the father, contends that the trial court erred in designating Erica Lynn Corey, the mother, the primary residential parent of their son. Because we conclude that the trial court erred as a matter of law in finding that the father was required to overcome a presumption against rotating custody, we reverse.

I. FACTUAL HISTORY

The parties, who have one son, separated when the mother left the parties' home in Gainesville and moved with their child to Key Biscayne. The father then moved to Key Biscayne to be near the child and his school. For the two years prior to trial, the parties followed a schedule in which their son spent alternating weeks with each parent. The testimony below unequivocally established that the child was thriving in all respects under this arrangement. In fact, certain health issues from which the child suffered improved in this two-year period.
The record contains detailed testimony concerning the parties' respective work schedules. The father is employed as an assistant state attorney. The testimony at trial established that he ordinarily picks up the child from the school's after-care program before 6 p.m. each day. If, for work reasons, the father is unable to arrive at school by that time, he is able to rely upon family and friends to pick up the child. However, there was no testimony that the father was ever late in picking up the child from the after-care program.
The wife is employed as a teacher at the same school the child attends. She leaves work around 4:00 p.m., and is therefore available to pick up the child from after-care each day.
The father sought weekly rotating custody, or, if the trial court denied rotating custody, that he be designated the primary residential parent. The mother also sought to be designated the primary residential parent. Ultimately, the trial court entered a Final Judgment of Dissolution of Marriage and Other Relief in which it denied the father's request for rotating custody and awarded primary residential custody of the child to the mother. The trial court then entered a Child Time Sharing and Parental Responsibility Order in which it ordered that the child be with the father on alternating weekends, beginning on Thursday nights. In the weeks during which the child would not be with his father on the weekend, he would be with the father on Thursday night. This order was later amended to provide that if the father cannot pick up the child from *317 school on his designated days with the child, the mother will be entitled to do so.
In reaching its decision, the trial court found that Florida law established a presumption against ordering rotating custody, and that the father was required to establish "exceptional circumstances" in order to justify such an order. The trial court stated:
1. ROTATING CUSTODY

While a Court clearly has the power to order rotating custody (Sec.61.121, Fla.Stat.) the long prevailing law has been that such an arrangement is presumptively NOT in a child's best interests. In order to overcome that presumption and make such an award this Court would have to find that exceptional circumstances exist which make such an arrangement in the child's best interests. See for example Mancuso v. Mancuso, 789 So.2d 1249 (Fla. 4th DCA 2001).
Florida courts have identified several factors that a trial court should consider in determining whether the particular circumstances in a case have overcome the presumption against rotating custody. Langford v. Ortiz, 654 So.2d 1237 (Fla. 2d DCA 1995). With the exception of the fact that both parents live in close proximity to each other the Court finds that the long-standing presumption against rotating custody was not overcome by competent substantial evidence.
While the Husband believes that such an arrangement is fair to him the Court finds that there was a lack of competent substantial evidence that alternating weeks would be fair to the child nor was there competent, substantial evidence that the frequency of the proposed rotation would not have a disruptive effect on the child and that it would likely not inhibit the development of a stable living environment, as the Wife testified it would.
The fact that the rotating arrangement was [sic] been "working" for over a year and that the child has adapted to it is insufficient for the Court to find that it is in his best interests to maintain that arrangement. The mere fact of his adapting does not mean that those circumstances are in his best interests. Ruffridge v. Ruffridge, 687 So.2d 48 (Fla. 1st DCA 1997).
The Court finds that the Husband has failed to prove by competent, substantial evidence the existence of special circumstances to overcome the presumption against rotating custody and his claim for the Court to order rotating custody is DENIED.
After an analysis of the factors set forth in section 61.13(3), Florida Statutes (2007), the trial court determined that the mother should be designated the primary residential parent because she offered greater stability and continuity,[1] and because her *318 work schedule afforded her greater availability to the parties' son in the afternoon hours.[2]

II. ANALYSIS

On appeal, the father primarily argues that the trial court erred in applying a legal presumption against rotating custody and in further requiring him to prove "exceptional circumstances" in order to overcome that presumption. We find merit with the father's position.

A. No Presumption Against Rotating Custody

In 1997, the Legislature enacted section 61.121, Florida Statutes, which states as follows: "The court may order rotating custody if the court finds that rotating custody will be in the best interest of the child." See Ch. 97-242, § 2, at 4437, Laws of Fla. Prior to that, case law established that rotating custody was presumptively disfavored. Ruffridge v. Ruffridge, 687 So.2d 48, 50 (Fla. 1st DCA 1997) ("[T]he Florida courts have recognized that rotating child custody is presumptively not in the best interest of the children."); Langford v. Ortiz, 654 So.2d 1237, 1238 (Fla. 2d DCA 1995) ("Rotating custody... is presumptively not in the best interest of a child."); Caraballo v. Hernandez, 623 So.2d 563 (Fla. 4th DCA 1993) (adhering to rule that rotating custody is *319 presumptively not in the best interest of the child); Wilking v. Reiford, 582 So.2d 717, 719 (Fla. 5th DCA 1991) ("Generally, rotating custody is presumptively not in the best interest of children, but there may be special circumstances which justify rotating physical residence."); Bienvenu v. Bienvenu, 380 So.2d 1164, 1165 (Fla. 3d DCA 1980) ("It is well-settled Florida law that split-custody provisions ... are strongly disfavored and ordinarily may not be sustained."). Courts relied upon an analysis of several factors, often described as "particular circumstances," Bienvenu, 380 So.2d at 1165, or "unique circumstances," Pfeifer v. Pfeifer, 616 So.2d 1190, 1191 (Fla. 4th DCA 1993), in order to determine whether the presumption had been overcome. See Langford, 654 So.2d at 1238 (listing factors that can overcome presumption); Bienvenu, 380 So.2d at 1165 (same).
Subsequent to the Legislature's enactment of section 61.121, courts continued to apply the presumption against rotating custody. See Cooper v. Gress, 854 So.2d 262, 266 (Fla. 1st DCA 2003) ("[N]othing in this plain statutory language [of section 61.121, Fla. Stat. (1999)] indicates the Florida Legislature intended to eliminate the longstanding presumption that rotating custody is not in a minor child's best interest."); Chapman v. Prevatt, 845 So.2d 976, 982 (Fla. 4th DCA 2003) ("Nothing in section 61.121 detracts from the long-standing presumption frowning upon a rotating custody arrangement."); Mancuso v. Mancuso, 789 So.2d 1249 (Fla. 4th DCA 2001) (holding that presumption required trial court to consider factors which may overcome the presumption); Hosein v. Hosein, 785 So.2d 703, 704 (Fla. 4th DCA 2001) (same); Mandell v. Mandell, 741 So.2d 617, 618 (Fla. 2d DCA 1999) ("If, by this language, the legislature sought to set aside the presumption against rotating custody, it failed. Nothing in the plain language of the statute suggests that the legislature intended to abolish the presumption."); cf. Bazan v. Gambone, 924 So.2d 952, 956 (Fla. 3d DCA 2006) (noting that "a joint custody agreement ... is generally disfavored when considering initial custody determinations").
Based upon the plain language of the statute, however, we cannot reach the same conclusion as our sister courts. See Vargas v. Enter. Leasing Co., 993 So.2d 614, 618 (Fla. 4th DCA 2008) ("`The starting point for [the] interpretation of a statute is always its language,' so that `courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" (quoting Garcia v. Vanguard Car Rental USA, Inc., 510 F.Supp.2d 821, 829-30 (M.D.Fla.2007), aff'd, 540 F.3d 1242 (11th Cir.2008))); Haskins v. City of Ft. Lauderdale, 898 So.2d 1120, 1123 (Fla. 4th DCA 2005) ("A basic canon of statutory interpretation requires us to `presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" (quoting Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992))).
In 1997, the Legislature chose to put rotating custody on the same level playing field as other types of custody arrangementsall of which are evaluated through the lens of the best interest of the child. This legislative action changed the judicially-created presumption against rotating custody. If the Legislature had intended to continue the long-standing presumption against rotating custody, it would have stated so in the statute. Instead, the Legislature, in enacting section 61.121, expressly stated that the only standard for ordering rotating custody is whether it is in the best interest of the child.
Put another way, after the 1997 Legislative action, no presumptionpositive *320 or negativeattaches to rotating custody in comparison to other permissible custody arrangements. As such, "[w]here, as here, the language of the statute is clear and unambiguous and conveys a clear and definite meaning, the statute should be given its plain and obvious meaning." City of Miami v. Valdez, 847 So.2d 1005, 1008 (Fla. 3d DCA 2003). Courts that continue to impose a higher burden on a parent seeking rotating custody improperly displace the Legislature's decision with their own judicial policy preference.
Moreover, it necessarily follows that a parent seeking rotating custody need not establish "exceptional circumstances" to overcome a presumption that no longer exists. The standard is simply the best interest of the child as set forth in section 61.13, Florida Statutes (2007).[3]

B. No Competent, Substantial Evidence

Additionally, we also find that the trial court's determinations in favor of the mother regarding the factors set forth in subsections 61.13(3)(d) and (m), Florida Statutes (2007), are not supported by competent, substantial evidence.
First, with regard to section 61.13(3)(m), the trial court found that the parties' work schedules were a "significant factor" in evaluating the custodial arrangement. Specifically, the trial court found that the fact that the father might have to rely on family, neighbors, or even the mother, to pick up the child from the school's after-school care or extracurricular activities, weighed in favor of designating the mother the primary residential parent. There was no evidence that the father had ever been unable to pick up his son from the after-care program on time. Moreover, the parties' amendment to the time sharing order provides that if the father cannot pick up the child, the mother will be entitled to pick up the child from school and the father will then pick up the child from her residence.
Second, in addressing section 61.13(3)(d), the trial court found that despite the fact that "the child's environment has been stable and satisfactory ... there was competent, substantial evidence that living in the same household would be in the child's best interest and provide the continuity and residential stability which he needs." Our review of the record reveals that the only evidence on this point upon which the trial court could have relied in reaching this conclusion was the opinion of the mother. The mother's opinion was not based on any claimed adverse effects the son had suffered while spending alternating weeks with each of his parents, but simply on the fact that she was his mother and she thought it was better, and that she had been a teacher for two years. This conclusory opinion testimony, not based upon any observable facts, did not constitute competent and substantial evidence on the issue of a stable environment for the parties' son. See § 61.13(3)(d), Fla. Stat. (2007); cf. O'Brien v. Crumley, 695 So.2d 881, 882 (Fla. 5th DCA 1997) (finding no abuse of discretion in the trial court's ordering rotating custody where "[o]nly the mother opined that the arrangement was unsuitable but she was unable to specify any adverse effects resulting from the arrangement").

III. CONCLUSION

Because we find that the trial court erred as a matter of law in requiring the *321 father to overcome a presumption against rotating custody, we reverse the Final Judgment of Dissolution, the Child Time Sharing and Parental Responsibility Order, and subsequent amendment to the Time Sharing and Parental Responsibility Order. On remand, the trial court shall make a determination regarding time-sharing and parental responsibility based upon the best interest of the child.
Reversed and remanded.
Judges SHEPHERD and LAGOA concur.
SCHWARTZ, Senior Judge (dissenting).[4]
This appeal by the father from a February 2008 final judgment of dissolution[5] challenges the trial court's rulings concerning the parties' then seven-year-old son.[6] For two years prior to the judgment the parties had "rotated custody" of the child with Ethan's spending alternating weeks with his parents starting at 5:00 p.m. on Sunday evening. Based upon specific findings that the so-called legal presumption against that process had not *322 been overcome, the trial court (a) refused to continue the arrangement and (b) determined that the primary physical responsibility of the child should be with the mother, who is a teacher at the public school the child attends, with liberal visitation to the father, an assistant state attorney, considerably extended beyond the "standard" schedule.[7] Mr. Corey seeks reversal of both rulings. I would affirm on the ground that no error of law or abuse of discretion has been demonstrated.

I.
The appellant's primary argument with respect to rejection of the preexisting "rotating custody" arrangement lies in his claim that the established "presumption" against rotating custody, see, e.g., Bienvenu v. Bienvenu, 380 So.2d 1164 (Fla. 3d DCA 1980), and cases cited therein, which was enforced by the trial court, did not survive the enactment in 1997 of section 61.121, Florida Statutes. See Ch. 97-242, § 2, at 4437, Laws of Fla. In accordance with each of our sibling courts which have considered the issue, I disagree. See Chapman v. Prevatt, 845 So.2d 976 (Fla. 4th DCA 2003); Mancuso v. Mancuso, 789 So.2d 1249 (Fla. 4th DCA 2001); Mandell v. Mandell, 741 So.2d 617 (Fla. 2d DCA 1999).[8]See also Hosein v. Hosein, 785 *323 So.2d 703 (Fla. 4th DCA 2001).[9] Furthermore, I find no abuse of discretion in the trial court's determination, after obviously careful consideration of the pertinent facts that the presumption against rotating custody had not been overcome. Cf. Mancuso, 789 So.2d at 1250; Hosein, 785 So.2d at 704.

II.
With respect to the primary residence issue, the trial court's decision was, again, based upon an incisive analysis of the factors set out in the then-applicable section 61.13(3). The court found that almost all of them presented no basis for choosing between the parents whom all agree, fortunately and happily for their son, are both loving, competent, and concerned parents. Since, given the rotating custody decision, a choice had to be made, he based his ruling upon the following:
The length of time the child has lived in a stable, satisfactory environment and desirability of maintaining continuity. [61.13(3)(d), Fla. Stat. (2008)]
Since January, 2006 the parties have shared custody of the child on a rotating schedule which continues through the present date. The Wife testified that she did not agree to this voluntarily and never felt that it was in the child's best interests. Notwithstanding the arrangement, both parents testified that the child was thriving and "could not be doing better", that they were able to communicate and admitted that both were good parents. The Mother lived with her parents on Key Biscayne from the date of separation through July of 2007 when she moved into her own home also on Key Biscayne. The Father subsequently moved to Key Biscayne from Southwest Miami-Dade to be physically close the child and remains living there and maintaining an apartment suitable and convenient for himself and the child.
To the extent possible while the parties have been operating under a rotating custody schedule the child's environment has been stable and satisfactory. However, as discussed above where the Court rejected the Husband's claim to continue rotating custody, there was competent, substantial evidence that living in the same household would be in the child's best interest's (sic) and provide the continuity and residential stability which he needs. The Court finds that greater stability and continuity will result from the Wife being the primary residential parent.
The court also found the following unspecified factor to be relevant under section 61.13(3)(m), Florida Statutes:
The Father is a law school graduate and a member of the Florida Bar. His current employment as an Assistant State Attorney with the Miami-Dade County State Attorney's Office is an important public position with great responsibility. Likewise the Wife, as a Miami-Dade county school teacher has a position of similar importance and level of responsibility.
The Husband testified that only rarely would he get off work later than 5:30 P.M. so he would be able to pick the *324 child up from after school care at Key Biscayne Elementary School before it ended at 6:00 P.M. However in the event that he was delayed he had neighbors, extended family or even the Wife, to look to for help in picking the child up until the Husband could get there to take him. This is contrasted to the Wife who would never have such problems and would always be able to take the child home on a timely basis and not need to rely on the help of others. Further, the evidence showed that the child is beginning to participate in extracurricular activities on at least 2 day/week which ends at 4:30 P.M., a time which the Husband would rarely or never be available to pick him up, again requiring him to rely on neighbors, family or the Wife.
The Court finds that the availability of the Wife, be it after-school or in the case of an emergency, is a significant factor to consider in evaluating what custodial arrangement is in the child's best interests. Further, while both parties have a network of extended family members, the Wife's parent's live geographically significantly closer than the Kendall-South Dade area where the Husband's family primarily resides and would therefore be more quickly available if needed or in an emergency.
While it is stating the obvious that decisions in cases like this in general, and indeed in this case in particular, are difficult and wrenchingand while I need not say, as it would be impossible to say, what I would have decided had I been there under our system, it is the trial court which is entrusted with that responsibility and whose decision must be upheld in the absence of a clear showing that it was mistaken. In the language of these cases, that means that we must find an "abuse of discretion" to reverse the determination in question. In conscience, I cannot so conclude. Cleary v. Cleary, 872 So.2d 299 (Fla. 2d DCA 2004); Artuso v. Dick, 843 So.2d 942 (Fla. 4th DCA 2003); Santiago v. Santiago, 830 So.2d 922 (Fla. 4th DCA 2002); Adair v. Adair, 720 So.2d 316, 317 (Fla. 4th DCA 1998); Sullivan v. Sullivan, 668 So.2d 329, 329-30 (Fla. 4th DCA 1996); Bader v. Bader, 639 So.2d 122, 124 (Fla. 2d DCA 1994); Jones v. Jones, 633 So.2d 1096, 1099 (Fla. 5th DCA 1994); Ross v. Ross, 321 So.2d 443, 444 (Fla. 3d DCA 1975).[10] As might be appropriate in virtually all of these cases, therefore, in the last analysis I would affirm on the authority of Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980).
NOTES
[1] Specifically, with regard to section 61.13(3)(d), Florida Statutes (2007), the trial court found as follows:

d. The length of time the child has lived in a stable, satisfactory environment and desirability of maintaining continuity.
Since January, 2006 the parties have shared custody of the child on a rotating schedule which continues through the present date. The Wife testified that she did not agree to this voluntarily and never felt that it was in the child's best interests. Notwithstanding the arrangement, both parents testified that the child was thriving and "could not be doing better", that they were able to communicate and admitted that both were good parents. The Mother lived with her parents on Key Biscayne from the date of separation through July of 2007 when she moved into her own home also on Key Biscayne. The Father subsequently moved to Key Biscayne from Southwest Miami-Dade to be physically close to the child and remains living there and maintaining an apartment suitable and convenient for himself and the child.
To the extent possible while the parties have been operating under a rotating custody schedule the child's environment has been stable and satisfactory. However, as discussed above where the Court rejected the Husband's claim to continue rotating custody, there was competent, substantial evidence that living in the same household would be in the child's best interest's [sic] and provide the continuity and residential stability which he needs. The Court finds that greater stability and continuity will result from the Wife being the primary residential parent.
[2] Considering section 61.13(3)(m), Florida Statutes (2007), the trial court found as follows:

m. Any other fact considered by the Court to be relevant.
The Father is a law school graduate and a member of the Florida Bar. His current employment as an Assistant State Attorney with the Miami-Dade County State Attorney's Office is an important public position with great responsibility. Likewise the Wife, as a Miami-Dade county school teacher has a position of similar importance and level of responsibility.
The Husband testified that only rarely would he get off work later than 5:30 P.M. so he would be able to pick the child up from after school care at Key Biscayne Elementary School before it ended at 6:00 P.M. However in the event that he was delayed he had neighbors, extended family or even the Wife, to look to for help in picking the child up until the Husband could get there to take him. This is contrasted to the Wife who would never have such problems and would always be able to take the child home on a timely basis and not need to rely on the help of others. Further, the evidence showed that the child is beginning to participate in extracurricular activities on at least 2 day/week which ends at 4:30 P.M., a time which the Husband would rarely or never be available to pick him up, again requiring him to rely on neighbors, family or the Wife.
The Court finds that the availability of the Wife, be it after-school or in the case of an emergency, is a significant factor to consider in evaluating what custodial arrangement is in the child's best interests. Further, while both parties have a network of extended family members, the Wife's parent's live geographically significantly closer than the Kendall-South Dade area where the Husband's family primarily resides and would therefore be more quickly available if needed or in an emergency.
[3] "The trial court determines the initial custody of children in dissolution of marriage proceedings pursuant to the guidelines set forth in section 61.13, which require all matters related to the custody of a minor to be determined in accordance with the best interest of the child." Wade v. Hirschman, 903 So.2d 928, 933 (Fla.2005).
[4] The tone and form of this opinion are quite obviously explained by the fact that it was initially written as the opinion of the court. Fortunately or unfortunately, neither of the other panel members agreed. (I have had this problem of non-persuasion before. E.g. Proprietors Ins. Co. v. Valsecchi, 435 So.2d 290, 298 n. 1 (Fla. 3d DCA 1983) (dissenting opinion), review denied, 449 So.2d 265 (Fla. 1984); Ins. Co. of N. Am. v. Pasakarnis, 425 So.2d 1141, 1142 n. 1 (Fla. 4th DCA 1982) (dissenting opinion), quashed, 451 So.2d 447 (Fla. 1984); Maszewski v. Piskadlo, 318 So.2d 226, 228 n. 1 (Fla. 2d DCA 1975) (dissenting opinion).)
[5] While we need not consider the broad revision of the statutory family law (including the repeal of section 61.121) which took effect on October 1, 2008, see ch. 2008-61, § 1, et seq., at 789, Laws of Fla., I wonder whether the changes in form and nomenclature, with which it is mostly concerned, significantly affect the previously established substantive law.
[6] The trial court ruled:

1. ROTATING CUSTODY
While a Court clearly has the power to order rotating custody (Sec. 61.121, Fla. Stat.) the long prevailing law has been that such an arrangement is presumptively NOT in a child's best interests. In order to overcome that presumption and make such an award this Court would have to find that exceptional circumstances exist which make such an arrangement in the child's best interests. See for example Mancuso v. Mancuso, 789 So.2d 1249 (Fla. 4th DCA 2001).
Florida courts have identified several factors that a trial court should consider in determining whether the particular circumstances in a case have overcome the presumption against rotating custody. Langford v. Ortiz, 654 So.2d 1237 (Fla. 2d DCA 1995). With the exception of the fact that both parents live in close proximity to each other the Court finds that the long-standing presumption against rotating custody was not overcome by competent substantial evidence.
While the Husband believes that such an arrangement is fair to him the Court finds that there was a lack of competent substantial evidence that alternating weeks would be fair to the child nor was there competent, substantial evidence that the frequency of the proposed rotation would not have a disruptive effect on the child and that it would likely not inhibit the development of a stable living environment, as the Wife testified it would.
The fact that the rotating arrangement was been (sic) "working" for over a year and that the child has adapted to it is insufficient for the Court to find that it is in his best interests to maintain that arrangement. The mere fact of his adapting does not mean that those circumstances are in his best interests. Ruffridge v. Ruffridge, 687 So.2d 48 (Fla. 1st DCA 1997).
The Court finds that the Husband has failed to prove by competent, substantial evidence the existence of special circumstances to overcome the presumption against rotating custody and his claim for the Court to order rotating custody is DENIED.
[7] As opposed to the "usual" Wednesdays and alternate weekends, the appellant was afforded the following, in the child time sharing and parental responsibility order:

The Husband shall have time sharing on alternate weeks commencing on March 1, 2008. The Husband's week-end time sharing shall commence at the completion of the after school care program at the child's school on Thursday or, at the Husband's option, immediately after school and end the following Monday morning when he drops the child off at school. The Husband shall also have time sharing with the child on Thursday night of the week in which he does not have weekend time sharing, with the time sharing to commence at the completion of the after school care or, at the Husband's option, immediately after school, on Thursday and end on Friday morning when he drops the child off at school.
If any weekend provided for in this section includes any day, or falls during any weekend or other time period provided for in Sections 2 through 10 below, the time sharing provisions of that section shall govern.
....
The child time sharing and parental responsibility order was amended, as follows:
If any time during the Father's visitation with the minor child the Father is unable to pick up the minor child after school then the Mother shall be entitled to pick up the minor child after school, spend the afternoon with the minor child, and the Father shall be entitled to pick up the child during his time sharing at the Mother's residence at any time.
....
[8] The Mandell court stated:

[W]e take this opportunity to address one issue that the parties raised. They ask whether section 61.121, Florida Statutes (1997), effectively sets aside the long held presumption that rotating custody is not in the best interest of a minor child. See Bienvenu v. Bienvenu, 380 So.2d 1164 (Fla. 3d DCA 1980). Section 61.121, as adopted by the legislature in 1997, provides: "The court may order rotating custody if the court finds that rotating custody will be in the best interest of the child."
If, by this language, the legislature sought to set aside the presumption against rotating custody, it failed. Nothing in the plain language of the statute suggests that the legislature intended to abolish the presumption. Our review of the limited legislative history offers little insight on the issue. We note that House Bill 1421, which enacted this provision, also amended section 61.13, Florida Statutes as follows:
61.13 Custody and support of children: visitation rights; power of court in making orders.
(2)(d) No presumption shall arise in favor of or against a request to relocate when a primary residential parent seeks to move the child and the move will materially affect the current schedule of contact and access with the secondary residential parent.
H.B. 1421, 2d Sess. (Fla. 1997).
The language in this amendment shows that the legislature understood how to set aside a previously established presumption. The absence of such language in section 61.121 leads us to conclude that either the legislature did not intend to set aside the presumption, or, if it did, it failed to appropriately implement its intent.
[9] Obviously, the majority opinion is in direct conflict with these decisions.
[10] Specifically, the law is to the contrary of the appellant's claim that the fact that the previous agreed "rotating custody" has resulted in the child's apparent well-being means that it must be continued virtually as a matter of law. See, e.g., Santiago, 830 So.2d at 923 ("We reject the former husband's argument that the time the child spends with each parent, which can be ascertained from the face of the judgment in this case, is determinative. See § 61.13(3), Fla. Stat. (2001) (listing the numerous factors that trial judges are to consider in making a primary residential parent designation); Undercuffler v. Undercuffler, 798 So.2d 867 (Fla. 4th DCA 2001)"); Young v. Hector, 740 So.2d 1153 (Fla. 3d DCA 1999) (upholding the trial court's decision as to custody notwithstanding contrary arrangements established by agreement of the parties had been successful).