582 So.2d 717 (1991)
Karen WILKING, Etc., Appellant,
v.
David M. REIFORD, Appellee.
No. 90-1352.
District Court of Appeal of Florida, Fifth District.
June 27, 1991.
Bill McCabe of Shepherd, McCabe & Cooley, Longwood, for appellant.
David M. Reiford, pro se.
COBB, Judge.
The issue on appeal is the propriety of a modification of custody and support of an eight year old child. The marriage of Karen Wilking and David M. Reiford produced one child, Sean David Reiford, born November 22, 1982. On August 21, 1985, the parties entered into a "Shared Parental Responsibility Contract." The mother was designated as the primary residential caretaker of Sean, and both father and mother agreed to shared parental responsibility. Reiford agreed to pay $45.00 each week in child support. Both parties agreed to maintain medical insurance through an employer for Sean, if possible, and equally divide any costs not covered by insurance. In an addendum to the contract, the father was allowed a minimum visitation consisting of every other weekend and Wednesday evenings, as well as two weeks during the summer. On September 19, 1985, the court dissolved the marriage and ratified the agreements reached by the parties (R 148-150).
At the time of the divorce, Reiford lived in Sanford and Wilking lived with her parents in Winter Springs (R 149). Two weeks later, Wilking moved to Holiday, Florida (15 miles north of Clearwater) with her new husband and Sean (R 113). On April 30, 1986, the court granted Reiford's motion to enforce visitation in accordance with the *718 terms of the final judgment, every other weekend. Moreover, the court ordered that neither parent consume alcohol or nonprescription drugs while in custody of Sean (R 151-152). On May 22, 1987, the court again ordered that Reiford be afforded visitation every other weekend. If Wilking failed to honor future visitation, the court directed that she forfeit the sum of $100.00 per incident. The parties were also ordered to "arduously and in good faith communicate with one another to afford an easy exchange and access of the minor child." (R 153-154). In August of 1987, Wilking, her new husband, their son Casey, and Sean moved to Pensacola. On September 15, 1987, the court found that it was the responsibility of Wilking to pay round trip air fare for Sean from Pensacola to Orlando in order to facilitate Reiford's visitation. The court also ordered Reiford to pay $1,913.25 in child support arrearages (the arrearages were generated by a disagreement over responsibility for a lien on Wilking's car). On January 25, 1988, the court sanctioned Wilking $100.00 for her denial of visitation to Reiford and once again ordered the parties to communicate in order to facilitate visitation.
In June of 1989, Wilking, her new husband, Casey, and Sean moved to Sarasota. In October of 1989, Wilking filed an amended petition for modification of final judgment of dissolution of marriage, alleging a need for additional support. Reiford counter-petitioned that a substantial change in circumstances warranted the transfer of residential custody to him. Wilking filed a motion for contempt in December of 1989, alleging that Reiford was in arrears of $606.68 for child support and $482.25 for medical bills. Reiford filed a motion for contempt in February of 1990, alleging that Wilking had again denied visitation.
On April 10, 1990, a hearing on the modification of child support and custody was held before the trial court. There were several areas of dispute between the parties, and testimony was taken in respect to visitation, child support, communication, medical bills, financial status of the parties, and current living conditions of the parties.
Thereafter, the trial court entered a supplemental final judgment which provided, inter alia:
The court further finds that based upon the testimony of the parties, their credibility, the pleadings on file and a review of the evidence at the trial that the former wife has shown a consistent pattern of thwarting and/or denying the former husband's visitation and access with the minor child which this court deems sufficient and finds that custodial responsibility of the minor child should be transferred to the former husband for a term of one (1) year commencing June 8, 1990.
* * * * * *
The court further finds and determines that it would be in the best interest of the minor child that after his one (1) year residency with his father the succeeding year he will reside with his mother and said schedule shall be alternated annually until further order of this court.
* * * * * *
Primary custodial responsibility of the minor child is hereby modified to provide that commencing June 8, 1990, primary custodial responsibility shall be awarded to the former husband, David M. Reiford, for a term of one (1) year at which time primary residential responsbility shall revert to the former wife for one (1) year and said schedule shall be alternated until the emancipation of the minor child or further order of this court.
* * * * * *
The non-custodial parent shall have the duty of picking the child up and the custodial parent shall have the duty of retrieving the child to commence and conclude all visitation set forth herein.
After custodial responsibility is shifted to the former husband the former wife shall have alternating weekends commencing June 15, 1990.
On appeal, Wilking challenges the transfer of primary residential custody to Reiford and, also, the requirement that she pay child support of $180.00 per month during that residency. In regard to the *719 second point, we find that the trial court did not abuse its discretion in setting the amount of such support, but the payment of that support may (or may not) be rendered moot by reason of our disposition of the first issue.
Custody of a child which alternates between the parents is termed "rotating custody." The weight of precedent disfavors rotating custody. Hurst v. Hurst, 158 Fla. 43, 27 So.2d 749 (1946); Wonsetler v. Wonsetler, 240 So.2d 870 (Fla. 2d DCA 1970); Rudolph v. Rudolph, 146 So.2d 397 (Fla. 3d DCA 1962); Bienvenu v. Bienvenu, 380 So.2d 1164 (Fla. 3d DCA 1980). Generally, rotating custody is presumptively not in the best interest of children, but there may be special circumstances which justify rotating physical residence. In Interest of S.M.H., 531 So.2d 228 (Fla. 1st DCA 1988); Elebash v. Elebash, 450 So.2d 1268 (Fla. 5th DCA 1984). Such circumstances include the age of the children, length of each period of custody, the disruptive influences created by different surroundings in alternating custody periods, and the attitude of the parties toward one another.
In Gerscovich v. Gerscovich, 406 So.2d 1150 (Fla. 5th DCA 1981), this court analyzed the age and stated preference of the children, the proximity of the custodial domiciles, and the reasonableness of the periods of alternating custody to determine whether rotating custody was in the best interest of the children. The children were ages 11 and 15, and both favored the change of custody. Merely three miles separated the mother and father's domiciles. Custody was to alternate each year, a period which the court found to be the least disruptive. After analyzing these factors, this court affirmed the final judgment's imposition of rotating custody as in the best interest of the children.
The circumstances of the instant case do not overcome the presumption that rotating custody is not in the best interest of Sean. He is eight years old. He has been torn between his parents since they divorced six years ago. The record does not reflect Sean's preference in the matter. The court simply ordered that he would live one year in Sanford, the next in Bradenton, back to Sanford, and on and on. The court never addressed the issue of Sean's education. The mother and father live in two different towns, and obviously, two different school districts. It is not in the best interest of a child to switch schools each year, make new friends in school and in the neighborhood, and readjust to the curriculum offered at the particular school. In situations where rotating custody is allowed, both parents live near to each other or the child is not yet in school. See Gerscovich (parents live three miles apart); Parker v. Parker, 553 So.2d 309 (Fla. 1st DCA 1989) (rotating custody until the child reached school age allowed where parents live in different towns, 95 miles apart). The trial court erred in ordering rotating custody in this case. The child needs a stable home, but unfortunately, his parents do not seem mature enough to provide him with one. The disruptive influences the lower court's order will generate, coupled with the attitudes of the parties, necessitate a reversal. Rotating custody between two distant cities should not be imposed when the child is of school age.
It may well be that the evidence before the trial court was sufficient to support a finding by the trial court, based upon the child's best interest, that the primary residential custody of the child should be changed to the father on a continuing basis, or it may be that the trial court will determine that, without the alternative of rotating custody, the best interest of the child dictates that the primary residential custody of the child should remain with the mother. In any event, that is a determination that must now be made by the trial court.
REVERSED AND REMANDED FOR REHEARING.
DAUKSCH and GRIFFIN, JJ., concur.