649 So.2d 297 (1995)
STATE of Florida, Appellant,
v.
David EARL, Appellee.
No. 94-836.
District Court of Appeal of Florida, Fifth District.
January 20, 1995.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Steven J. Guardiano, Asst. Atty. Gen., Daytona Beach, for appellant.
David S. Morgan, Daytona Beach, for appellee.
GRIFFIN, Judge.
The State of Florida appeals an order dismissing criminal charges against defendant, David Earl, and declaring unconstitutional section 744.301(1), Florida Statutes (1993), the Florida statute that defines and identifies the natural guardians of children.[1]
On October 4, 1993, the state filed an information charging Earl with one count of *298 Interference With Custody, in violation of section 787.03, Florida Statutes (1993). The charging document states that Earl interfered with the custody of three children, ages six, five and three years. Earl is the biological father of the three children. Although they were born out of wedlock to Earl and to Elizabeth Adkins, Earl's name appears on two of the childrens' birth certificates and he claims to have raised all of the children, with Adkins, as a family. The interference charge stems from an event where Earl removed the children from their home in Daytona Beach and traveled with them to South Carolina without Adkins' permission.
The lower court's order of dismissal was based on an order from a court in another state relinquishing custody of the children to Adkins and Earl. The lower court concluded that because that court order existed determining Earl had a right to custody, he could not have violated section 787.03. This ruling has not been challenged on appeal and the state concedes the correctness of the dismissal. The state seeks in this appeal only to undo the ruling by the trial court declaring the guardianship statute unconstitutional. We agree with the state that the lower court's declaration that section 744.301(1), Florida Statutes is unconstitutional should be vacated.
There are several reasons for our decision. First, resolution of this case does not require a declaration that section 744.301 is unconstitutional. Section 787.03, Florida Statutes, under which Earl was charged, relates to interference with custody. Since the lower court ruled, and it is no longer disputed, that Earl had a right of custody by virtue of the prior order, the constitutional issue did not need to be reached.
Even if the lower court's ruling was an alternative one, it is still problematical for several reasons. It may have been made in response to this court's decision in State v. Badalich, 479 So.2d 197 (Fla. 5th DCA 1985), where we held that a natural parent can be guilty of interference with custody if he has no right to custody. We explained in Badalich that under the 1983 version of section 744.301(1), as further defined in section 744.102(1), the mother of a child born out of wedlock had the right of custody. Since, absent a court order, the father of an illegitimate child had no right to custody, a natural father could be guilty of the crime of interference. 479 So.2d at 200.
We note, however, that the statutes on which Badalich was based have been amended. It appears that section 744.301(1), which previously defined guardianship in terms of custody, is no longer the key to an interference claim.[2] Although very poorly written, it appears that subsection (2) of section 787.03, added in 1987, is designed to govern the crime of interference with custody by a parent. Thus, the question whether section 744.301 may have some equal protection defect is now irrelevant to the issue of paternal interference with custody. Section 744.301(1) tells us that the unwed mother is the natural guardian but it does not say that the unwed father has no custodial rights. See Barnes v. Frazier, 509 So.2d 401 (Fla. 5th DCA 1987).
Even if section 744.301 were to control the interference issue, it must be construed, if possible, to have a constitutional interpretation. The Fourth District has already done so, holding that when an "unwed father" demonstrates and carries out the requisite settled purpose to be a father, he comes within the first sentence of the statute, making him a natural guardian along with the unwed mother. DeCosta v. North Broward Hosp. Dist., 497 So.2d 1282 (Fla. 4th DCA 1986). The last sentence of the section, identifying the mother as the natural guardian of a child born out of wedlock, applies to those cases where there is no "father" in the sense of a male who has come forward, declared his paternity and acted as a parent in providing emotional, physical and financial support to his child. Id.
AFFIRMED in part; REVERSED in part.
DIAMANTIS and THOMPSON, JJ., concur.
NOTES
[1] Section 744.301 reads:

744.301 Natural guardians. 
(1) The mother and father jointly are natural guardians of their own children and of their adopted children, during minority. If one parent dies, the natural guardianship shall pass to the surviving parent, and the right shall continue even though the surviving parent remarries. If the marriage between the parties is dissolved, the natural guardianship shall belong to the parent to whom the custody of the child is awarded. If the parents are given joint custody, then both shall continue as natural guardians. If the marriage is dissolved and neither the father nor the mother is given custody of the child, neither shall act as natural guardian of the child. The mother of a child born out of wedlock is the natural guardian of the child.
[2] § 744.102(8), Fla. Stat. (1993).