PER CURIAM.
 

 Erika Mudafort, the former wife, appeals the trial court’s amended final judgment of dissolution of marriage. She raises three issues on appeal: (1) whether the trial court erred in considering certain relocation factors, which we affirm without further comment; (2) whether the trial court erred in not considering the factors laid out in
 
 Mancuso v. Mancuso,
 
 789 So.2d 1249 (Fla. 4th DCA 2001), when it ordered equal time-sharing; and (3) whether the trial court erred in imputing income to the former wife for child support purposes. We find that the trial court did not err in not considering the
 
 Mancuso
 
 factors because the relevant family law statutes have abrogated any presumption against equal time-sharing. However, we agree with the former wife that the trial court erred in imputing income to her for child support purposes and therefore reverse and remand.
 

 The parties were married on November 4, 2006 in Vero Beach, Florida, with a minor child born of the marriage. Before the petition for dissolution was filed, however, the parties agreed that the former wife could move to Bradenton, Florida, while Jesse Lee, the former husband, remained in Vero Beach. However, that arrangement proved untenable and the parties entered into a temporary mediated agreement which provided that the parties would essentially split custody of the mi
 
 *1197
 
 nor child until the dissolution was finalized, meeting halfway between the Sarasota-Bradenton area and Vero Beach.
 

 In its amended final judgment, the trial court provided for equal time-sharing
 
 [1]
 
 and ordered the former wife to pay $128 per month to the former husband in child support, based on the trial court’s imputation of income to the former wife. The former wife appeals.
 

 In
 
 Mancuso,
 
 this court found that the enactment in 1997 of section 61.121, Florida Statutes (1997),
 
 [2]
 
 did not abrogate the longstanding presumption that rotating custody was not in the best interest of the child. 789 So.2d at 1250;
 
 see also Mandell v. Mandell,
 
 741 So.2d 617 (Fla. 2d DCA 1999) (finding that “[i]f ... the legislature sought to set aside the presumption against rotating custody [by the enactment of section 61.121], it failed”). We then reviewed a list of factors that trial courts should consider when determining whether the circumstances overcome the presumption against rotating custody.
 
 Id.
 
 Because the final judgment of dissolution in the instant case created an equal time-sharing arrangement but did not indicate consideration of the
 
 Mancuso
 
 factors, the former wife argues that the trial court did not overcome the presumption against equal time-sharing. We disagree.
 

 The Legislature has made important statutory changes in the past few years which we find have abrogated any judicial presumption against equal time-sharing. First, effective October 1, 2008, the Legislature repealed section 61.121.
 
 See
 
 Ch. 2008-61, § 6, at 792, Laws of Fla. Second, and more importantly, in 2009 the Legislature revised section 61.13(2)(e)(l), to state, in part, “There is no presumption for or against the father or mother of the child
 
 or for or against any specific time-sharing schedule
 
 when creating or modifying the parenting plan of the child.”
 
 See
 
 Ch. 2009-180, § 8, at 1858, Laws of Fla. Therefore, based on a plain reading of the statutes, there is no longer a presumption against equal time-sharing. As such, it is no longer necessary for trial courts to consider any of the factors enunciated in
 
 Mancuso
 
 because there is no presumption to overcome. Thus, we conclude that the trial court did not err in crafting an equal time-sharing arrangement.
 

 We now turn to the issue of the trial court’s imputation of income to the former wife. “In considering the imputation of income, the standard of review is whether the trial court’s determination is supported by competent, substantial evidence.”
 
 Zarycki-Weig v. Weig,
 
 25 So.3d 573, 575 (Fla. 4th DCA 2009).
 

 Section 61.30(2)(b), Florida Statutes (2009), governs the imputation of income for child support purposes:
 

 Monthly income shall be imputed to an unemployed or underemployed parent if such unemployment or underemploy
 
 *1198
 
 ment is found by the court to be voluntary on that parent’s part, absent a finding of fact by the court of physical or mental incapacity or other circumstances over which the parent has no control.
 

 § 61.30(2)(b), Fla. Stat. (2009).
 

 In order to adhere to this statute, the courts have laid out a two-step process to properly impute income to a party:
 

 First, the trial court must conclude that the termination of income was voluntary; second, the court must determine whether any subsequent underemployment “resulted from the spouse’s pursuit of his own interests or through less than diligent and bona fide efforts to find employment paying income at a level equal to or better than that formerly received.”
 

 Rodriguez v. Medero,
 
 17 So.3d 867, 870 (Fla. 4th DCA 2009) (quoting
 
 Konsoulas v. Konsoulas,
 
 904 So.2d 440, 444 (Fla. 4th DCA 2005)). Additionally, the burden of proof is on the party seeking to impute income to the other party.
 
 Id.
 
 at 870.
 

 As to the first prong, the voluntariness of the termination of prior employment, the former wife concedes that she voluntarily left her employment in Vero Beach when she chose to move to Bradenton. The real issue here is whether the former wife is underemployed at all. The trial court found that the former wife was underemployed in Sarasota.
 
 [3]
 
 We disagree.
 

 At the final hearing, the former wife testified that before the parties separated she was employed at a Vero Beach salon as a salon assistant, where she “sometimes” made $500 per week
 
 during season,
 
 “sometimes even more.” However, the former wife clearly testified that her work at the Vero Beach salon was “super, super seasonal” and that “during the summer I’d make hardly anything. I may make $200, 300, 400.” The former wife also testified that she was employed as an independent contractor at the Vero Beach salon and as a consequence she had to pay more in taxes than an ordinary employee would.
 

 The former wife further testified that at the salon in Sarasota, she was employed as a full stylist with “[her] own chair,” making a guaranteed $360 per week throughout the year, with the possibility of a 40% commission of whatever exceeds her base pay of $360 per week. She added that she was working toward building her clientele, which “takes time.”
 

 No evidence was presented to rebut the former wife’s testimony. Nonetheless, the trial court imputed income of $500 per week on the former wife in the final judgment of dissolution. As the former wife’s testimony was that she previously made
 
 at most
 
 $500 per week during season, and
 
 not year round,
 
 the trial court’s imputation of $500 per week of income was not supported by competent substantial evidence and the former husband, as the party seeking the imputation of income, did not meet his burden.
 

 Therefore, this matter is reversed and the remanded to the trial court with instructions to determine the former wife’s actual income without any imputation.
 

 Reversed in part and affirmed in part.
 

 GROSS, C.J., HAZOURI and CIKLIN, JJ., concur.
 

 [1]
 

 . In the past, "equal time-sharing” went by another name: "rotating custody” (and sometimes "split custody”). Rotating custody was a parenting arrangement whereby neither parent was designated as the primary residential parent, and the minor child split time evenly between both parents. Of course, with the overhaul to the family law statutes in 2009, the concept of "custody” was replaced with "time-sharing,” where neither parent is designated as the primary residential parent; both parents must comply with a parenting plan that sets out in detail each parent’s responsibilities and involvement in the minor child’s life. For ease of reference, we refer to what was previously known as "rotating custody” as "equal time-sharing” unless indicated otherwise.
 

 [2]
 

 . Section 61.121, Florida Statutes (1997), stated simply: "The court may order rotating custody if the court finds that rotating custody will be in the best interest of the child.”
 

 [3]
 

 . The former wife testified that she moved to Bradenton but works in Sarasota.