CLARK, J.
Appellant challenges the circuit court’s post-dissolution order holding her in contempt of court and sanctioning her by requiring her to pay the attorneys’ fees of the Former Husband incurred in the contempt proceedings. Because no court order in effect at the time the contempt order was entered required the Former Wife to provide “normal and usual routine contact,” the order finding the Former Wife in contempt is reversed.
The final judgment of dissolution was entered in October, 2004. The parties continued to litigate. In addition to numerous post-dissolution motions and petitions filed by both parties, a dependency action was initiated by the Florida Department of Children and Families (“DCF”) which twice resulted in temporary orders severely limiting Former Husband’s contact with his sons. This appeal is the fourth appeal by these parties to this Court to date. See Koslowski v. Koslowski, (Case no. 1D06-5111; denial of writ of certiorari pertaining to circuit court case number 2003 DR 006322); Koslowski v. Koslowski, 952 So.2d 1195 (Fla. 1st DCA 2007) (affirming without opinion the trial court’s order allowing Former Wife to relocate with children to Seattle, Washington); Koslowski v. Koslowski (Hardman), 78 So.3d 642 (Fla. 1st DCA 2011) (affirming circuit court order requiring Father to pay for respite care for dependent adult son). Former Wife and her current husband have been named the eldest son’s guardians in a separate guardianship proceeding in the State of Washington due to the son’s severe medical conditions.
On July 9, 2010, the circuit court entered an order on various motions and addressed contact between two of the sons and their father. The order was affirmed on direct appeal. Koslowski v. Koslowski (Hardman), 78 So.3d 642 (Fla. 1st DCA 2011). The order provided that Former Husband was entitled to a minimum of four days per month of unsupervised “visitation” with the youngest son (then still a minor) during daytime hours of each day, and “visitation” with the eldest son under “the same parameters” as for the youngest son.[1] The contact was to take place in the *1248 Seattle, Washington area, where the sons resided. Former Husband visited his sons pursuant to the July 9, 2010 order during October, 2010 and April, 2011. Thereafter, he filed his motion for contempt against Former Wife and amended the motion twice. Former Husband alleged that Former Wife was in contempt of court because she had refused to agree to more than the minimum time provided in the order, including overnight visits, as was encouraged in the order. He sought “expanded and extended visitation” with his sons and sought sanctions against Former Wife for her failure to negotiate such additional time with his sons.
After an evidentiary hearing on former Husband’s motion, the circuit court found Former Wife in contempt because she “prevented the Former Husband from having normal and usual routine contact with both” the eldest and youngest son. In addition, the court granted Former Husband’s request to sanction Former Wife by requiring her to pay his attorneys’ fees incurred in the contempt proceedings, in the amount of $1825.00. The court did not conduct any inquiry of the parties’ current financial situations, needs or abilities.
It is well settled that “[o]ne may not be held in contempt for violating something that an order does not say.” Keitel v. Keitel, 716 So.2d 842, 844 (Fla. 4th DCA 1998) (Farmer, J., concurring specially); See also Harris v. Hampton, 70 So.3d 747 (Fla. 4th DCA 2011); DeMello v. Buckman, 914 So.2d 1090 (Fla. 4th DCA 2005). The order entered July 9, 2010 does not require Mother to provide Father with “normal and usual routine contact” with his sons.
The provisions of the order regarding contact between the Father and sons entitle Father to “unsupervised visitation” to be located “in the Seattle area” during daytime hours for a minimum of “once per month for a minimum of four days.” No other directive about Father’s contact with his sons is contained in the July 9, 2010 order. There was no evidence of Former Wife’s violation of any specific provision of the July 9, 2010 order. Although the July 9, 2010 order contained aspirational goals encouraging the parties to agree to additional contact without court involvement, “implied or inherent provisions of a final judgment cannot serve as a basis for an order of contempt.” Keitel v. Keitel, 716 So.2d at 844.
While reversal of the contempt order necessarily results in reversal of the sanction, we also note that the lack of a purge provision in the order on appeal indicates that the court found a criminal contempt. Because the contempt action arose in the context of a dissolution action, the trial court was required to determine need and ability to pay before imposing this monetary sanction. See § 61.16(2), Fla. Stat.; Hunt v. Hunt, 855 So.2d 1181 (Fla. 1st DCA 2003); Keitel v. Keitel, 716 So.2d 842 (Fla. 4th DCA 1998). The failure to make this determination was reversible error.
In light of the foregoing, the order finding Former Wife in contempt and *1249 punishing her with a fíne in the amount of Former Husband’s attorneys’ fees is REVERSED.
WETHERELL and MAKAR, JJ„ concur.

. The concept of one parent having custody and the other parent being a visitor in a child's life, and the term ''visitation,” were rendered obsolete under the 2008 amend *1248 ments to section 61.13, Florida Statutes, in favor of a policy promoting shared parenting via a parenting schedule. See Mayo v. Mayo, 87 So.3d 820 (Fla. 2d DCA 2012); Bainbridge v. Pratt, 68 So.3d 310 (Fla. 1st DCA 2011). However, the dissolution order in this case was entered in 2004, prior to the statutory policy changes. In addition, the extensive post-dissolution history, including the dependency proceedings, the court-approved relocation by Former Wife with the sons to the state of Washington in 2006 while Former Husband remains in Florida and the dependent adult son’s unusual legal status puts this case in a different posture than cases where "shared parenting” is presumed.