LAGOA, J.
The mother, Nedge Nora Turnier, appeals from a final judgment establishing a parenting plan which orders that the parties’ minor child live with the father, Jonathan Lee Stockman, for the majority of the school year so that their child can attend the Florida School for the Deaf and the Blind located in St. Augustine, Florida. For the following reasons, we affirm.
I. FACTUAL AND PROCEDURAL HISTORY
The mother and father have a son, T.S., who was born on August 4, 2009. The mother and father never married, but the father’s paternity was never in dispute.[1] The mother, father, and T.S., have all been deaf since birth.
The father instituted the present case as a paternity proceeding in St. Johns County, where he lives, but the case was transferred to Miami-Dade County, where the mother and T.S. live. Because paternity was never in dispute, the matter proceeded on the issues of time sharing and determination of a parenting plan. After participating in mediation, the parties entered into a temporary and partial mediated settlement agreement on March 9, 2012. In the mediated settlement agreement, the parties agreed to shared parental responsibility, and to a temporary time-sharing schedule. The mediated settlement agreement reserved, for the trial court’s consideration, the issues of where T.S. should attend school, permanent time sharing, child support, and uncovered medical expenses.
The trial took place over the course of two days, August 31, 2012, and June 5, 2013. On the first day of trial, the father testified that he wants T.S. to attend the same school he attended — the Florida School for the Deaf and the Blind (“FSDB”) — which is located in St. Augustine, where he lives. He testified that T.S. did not know his numbers one through ten or his ABCs, and that his vocabulary was extremely limited and showed no signs of improvement. He also testified that he did not know if his son was currently in school because the mother did not keep him informed or answer his questions concerning T.S.
The mother testified that she enrolled T.S. in a school in Broward County that had both hearing and deaf students. She testified that T.S. was learning a lot and doing well in the school. She admitted that she did not consult the father when she decided to enroll T.S. in the school.
*399 At the conclusion of the first day of trial, the trial judge stated that he could not make a final decision at that time, and that he needed to appoint a guardian ad litem (“Guardian”). The trial court stated:
THE COURT: I have heard enough, Mr. Metsch, to cause me some concern about this case. I’m not sure we can finish with the trial today. I want to hear from the mother about the child’s education. And my inclination is to appoint a Guardian Ad Litem. Someone who is not aligned with either the mother or the father, but will tell me what’s appropriate for this child.
I don’t know what school he is in, if any. I don’t know whether it’s appropriate for him. And it bothers me that if the child is in school and I certainly hope that he is, but if he is in school how can he have gotten in school without the father’s knowledge.
The parties agreed to share parental responsibility. That is one of the decisions that should have been made by the two parents together. The mom doesn’t get to make a unilateral decision like that.
[[Image here]]
THE COURT: So rather then (sic) make a final decision now because I really can’t, I need to appoint a Guardian Ad Litem. I need a Guardian Ad Litem to meet with the mom and meet with the dad.
The trial judge expressed concern that he might not be able to find a Guardian who knew sign language, and the mother’s attorney offered to help look for a Guardian who was proficient in sign language.
Trial continued on June 5, 2013. The father again testified that he wanted T.S. to attend the FSDB, which he believes provides a better education for a deaf child than a mainstream public school. He also testified that T.S. was not learning enough sign language, and that he does not know how to spell his name. The father testified that at the FSDB the education is directly in sign language and that T.S. would have the opportunity to participate in sports and extracurricular activities. The father wanted an official from the FSDB to testify by phone, but the mother objected. A brochure from the FSDB was admitted as an exhibit. The father’s mother, father, two sisters, live-in girlfriend, and a parent of a student currently attending the FSDB all testified.
The mother testified that T.S. attends a school in Pompano Beach that has an educational program for deaf children. The school has both hearing and deaf children, and some of the teachers know sign language. She also explained that T.S. has an interpreter for part of the day. She testified that the school is teaching T.S. sign language, but that she also works with him at home to help him use and understand sign language. She testified that T.S. knows his ABCs, his numbers one through ten, and that he can sign his name. She admitted on cross-examination that she does not communicate directly with the father. The mother’s mother also testified.
After considering the factors set forth in section 61.13(3), Florida Statutes (2013), the trial court found that it was in the best interests of T.S. that he attend the FSDB in St. Augustine. As a result, the trial court ordered that T.S. live the majority of the school year in St. Augustine with the father, and the majority of the summer with the mother, with the parties alternating weekends. The trial judge also stated that although he looked for a Guardian who could sign or was familiar with the deaf community, he could not find one. The trial court entered a detailed Final Judgment on July 2, 2013. The mother appeals raising several issues, but only two warrant discussion.
*400 II. STANDARD OF REVIEW
We review the trial court’s final judgment establishing a parenting plan for an abuse of discretion. See Schwieterman v. Schwieterman, 114 So.3d 984 (Fla. 5th DCA 2012); Miller v. Miller, 842 So.2d 168 (Fla. 1st DCA 2003). As a result, the “trial court’s time-sharing plan must be affirmed if there is competent substantial evidence to support that decision and reasonable people could differ with respect to the trial court’s decision.” Schwieterman, 114 So.3d at 987.
III. ANALYSIS
The mother argues that the trial court committed reversible error in failing to appoint a Guardian for T.S. The mother acknowledges that the law only mandates the appointment of a Guardian in a proceeding to determine a parenting plan when there is an allegation of child abuse, abandonment, or neglect.[2] Otherwise, the appointment of a Guardian is within the trial court’s discretion. She asserts, however, that the trial judge in the instant case “relinquished” his discretion concerning appointment of a Guardian when, at the conclusion of the first day of trial, he stated that he needed to appoint a GuardT ian.[3] We are not persuaded by this argument.
The mother can cite to no case standing for the proposition that, in the absence of a statutory requirement, once a trial judge states that he or she “needs” a Guardian it is reversible error to fail to appoint one. Instead, the issue is analogous to that of an interlocutory ruling which, it is well established, a trial court has discretion to modify or reverse at any time before final judgment. See Bravo Elec. Co. v. Carter Elec. Co., 522 So.2d 480, 480-81 (Fla. 5th DCA 1988) (“[Tjrial judges have the right and authority, at any time before entering a final judgment, to change their minds and to change any prior interlocutory ruling.”); see also Mills v. Martinez, 909 So.2d 340 (Fla. 5th DCA 2005).
Equally important, the record reflects that the mother never filed a motion to *401 appoint a Guardian. At the beginning of the second day of trial, June 5, 2018, the mother did not object to the fact that a Guardian had not been appointed, and proceeded to present her case. The mother’s attorney did not address the issue until closing argument, when he acknowledged that although the statute did not mandate the appointment of a Guardian in this circumstance, “all of us here would be in agreement that it would be nice to have someone whose only perspective was that of the child’s.” We find this insufficient to preserve the issue. Cf. D.T. v. Fla. Dep’t of Children & Families, 54 So.3d 632, 633 (Fla. 1st DCA 2011) (affirming statutory findings in dependency case where appellant “failed to preserve this issue by a motion for rehearing or to otherwise bring the claimed deficiency to the attention of the trial court at a point when it could have been corrected”).
We conclude that the trial court was not required to appoint a Guardian in the proceeding below. Moreover, by failing to move for the appointment of a Guardian or object below, the mother waived the issue of whether the trial court abused its discretion in failing to do so. See Millen v. Millen, 122 So.3d 496, 498 (Fla. 3d DCA 2013) (“[I]n the absence of an objection below, this Court -will not consider issues for the first time on appeal except in cases of fundamental error.”; finding no fundamental error where trial court allowed guardian ad litem to question witnesses at trial contrary to sections 61.401 and 61.403, Florida Statutes).
Turning to the second issue, relying upon Bainbridge v. Pratt, 68 So.3d 310 (Fla. 1st DCA 2011), the mother also argues that the trial court committed reversible error in creating a parenting plan for a physically-challenged child without considering expert testimony. Bainbridge stands for no such proposition. In Bain-bridge, the First District reversed a trial court’s order implementing annual rotation of time sharing for a child who had attention deficit hyperactivity disorder. In reaching its conclusion that there was insufficient evidence that such a plan was in the child’s best interest, the court addressed the factors which favor a rotating parenting plan and the statutory factors set forth in section 61.13(3). The court did not rely upon the fact that no expert testimony had been presented, and nowhere does Bainbridge state that when a child has a physical condition affecting educational issues a trial court must consider expert testimony in making a determination of that child’s best interests.[4]
Here, the trial court’s order was supported by competent substantial evidence. The trial court heard from both the father and mother, both of whom are deaf and therefore have particular knowledge of the communication and educational needs of a deaf child. Each testified as to his or her opinion regarding T.S.’s level of communication. The father testified in detail about the education T.S. would receive at the FSDB. The mother, in turn, testified as to the education T.S. receives at the school in Pompano Beach and how she *402 works with him on his communication skills at home. Both parties’ family members testified regarding T.S.’s home life with each parent. A parent of a student who currently attends the FSDB testified regarding his son’s experience at the FSDB, and one of the father’s sisters testified that T.S.’s teacher at the Pompano Beach school told her that it would be better for T.S. to attend the FSDB.
IV. CONCLUSION
The Florida Legislature may wish to amend section 61.401, Florida Statutes (2013), to require the appointment of a guardian ad litem in such unique circumstances as the one presented here. Until then, given the clear language of the statute, we cannot find that the trial court abused its discretion in failing to appoint a guardian ad litem where not required by section 61.401. And although a recommendation from a guardian ad litem may have been helpful given the needs of the child in this case, we nonetheless find that the trial court’s decision was supported by competent, substantial evidence. Accordingly, we affirm the final judgment entered below.
Affirmed.

. The father is named on T.S.'s birth certificate, and the mother has always acknowledged the he is T.S.'s father.

. Section 61.401, Florida Statutes (2013), states:
In an action for dissolution of marriage or for the creation, approval, or modification of a parenting plan, if the court finds it is in the best interest of the child, the court may appoint a guardian ad litem to act as next friend of the child, investigator or evaluator, not as attorney or advocate. The court in its discretion may also appoint legal counsel for a child to act as attorney or advocate; however, the guardian and the legal counsel shall not be the same person. In such actions which involve an allegation of child abuse, abandonment, or neglect as defined in s. 39.01, which allegation is verified and determined by the court to be well-founded, the court shall appoint a guardian ad litem for the child. The guardian ad litem shall be a party to any judicial proceeding from the date of the appointment until the date of discharge.
(emphasis added). See also Tallahassee Mem'l Reg'l Med. Ctr., Inc. v. Petersen, 920 So.2d 75, 78 (Fla. 1st DCA 2006) (listing circumstances in which trial court may or must appoint a guardian ad litem).

. The mother relies upon this Court’s recent opinion in Flores v. Sanchez, 137 So.3d 1104, 39 Fla. L. Weekly D653 (Fla. 3d DCA Mar. 26, 2014), and the Supreme Court of Florida’s opinion in Department of Health & Rehabilitative Services v. Privette, 617 So.2d 305 (Fla. 1993), for her argument that the trial court was required to appoint a Guardian. Flores states the rule, established in Privette, that a trial court must hear from a guardian ad litem before ordering paternity testing when a child has a legal father. This is because a child has a legal and factual right to maintain legitimacy, and a guardian ad litem must be appointed to represent the child’s best interests. 617 So.2d at 307-08. Neither case applies under the facts of the instant case where T.S.’s paternity is not in doubt and neither party seeks to establish paternity rights that are adverse to T.S.

. Additionally, we find that the mother waived this issue. The mother herself did not present any expert or independent testimony to support her case that it was in the best interests of T.S. to attend the school located in Pompano Beach. Her entire case consisted of her and her mother’s testimony. She cannot now complain that the trial court committed reversible error by not hearing expert testimony when she did not present any such testimony herself. See Ward v. State, 470 So.2d 100, 101 (Fla. 1st DCA 1985) (finding that where defendant did not proffer expert testimony, it was "not precluded by any action of the court, erroneous or otherwise, but by counsel himself”); cf. Behar v. Southeast Banks Trust Co., N.A., 374 So.2d 572, 575 (Fla. 3d DCA 1979) ("One who has contributed to alleged error will not be heard to complain on appeal.”).