IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

J.P., the Father of J.P., Minor
Child,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

        Appellant,

v.

CASE NO. 1D15-5729

D.P., the Mother of J.P., Minor
Child, DEPARTMENT OF
CHILDREN AND FAMILIES,
and GUARDIAN AD LITEM
PROGRAM,

        Appellees.

_____/

Opinion filed August 4, 2016.

An appeal from the Circuit Court for Leon County.
Karen A. Gievers, Judge.

M. Linville Atkins of Flury & Atkins, LLC, Tallahassee, for Appellant.

Mike Donovan of Legal Services of North Florida, Inc., Tallahassee, for Appellee
D.P., the Mother; No appearance for Appellee Department of Children and
Families; Kelley Schaeffer, Guardian ad Litem Program, Sanford, for Appellee
Guardian ad Litem Program.

WOLF, J.

        Appellant, the father, challenges a final judgment establishing a parenting

plan that would require the six-year-old minor child to move over 300 miles away

to live with her mother when she begins middle school. We find this order of a

prospective change in residence was unsupported by the record and contrary to the court's finding that living with appellant was in the child's best interests. We also find such a prospective-based analysis that purports to determine that a change in residence will be in the child's best interests approximately 5 years in the future is impermissible. Finally, we find the trial court's imposing a change in residence which was neither requested by either parent nor addressed at the hearing violated appellant's due process rights. Thus, we reverse.

The minor child, J.P., was born on May 6, 2009, in Tallahassee. At the time of her birth, both J.P. and the mother tested positive for cocaine. The child was sheltered and placed with her maternal aunt, who also lived in Tallahassee. There were no allegations raised against appellant, who lives in Orlando. The Department of Children and Families approved a home study for appellant. After the mother failed to complete her case plan, the court entered an order placing the child with the aunt as a permanent guardianship. It is unclear from the record why the child was not placed with appellant. The trial court indicated in an order that appellant was not represented by counsel during those proceedings and had been given the impression that the child was going to be placed with him.

Six years later, in April 2015, appellant moved for reunification. The mother responded by also seeking reunification. The court entered an interim order permitting the child to go live with appellant in Orlando beginning in August 2015.

In a pre-hearing stipulation, the parties informed the court that they disagreed on whether the child should go to school in Tallahassee and therefore spend the majority of her time with the mother, or whether she should go to school in Orlando and spend the majority of her time with appellant. The parties also disagreed on how much time the "non-school" parent would spend with the child during school breaks.

The court held an evidentiary hearing in November 2015. Appellant testified that during the six years since the child had been born, he had traveled to Tallahassee regularly to visit her. He had obtained a master's degree in project management and had held a job in that field for over a year. He had gotten married. He had also enrolled the child in a private school in Orlando, where she had just begun the first grade.

The mother testified that she had also maintained close contact with the child since her birth. She worked full-time at McDonald's. The child had only ever spent one night at the mother's house, and that was the week before the hearing.

Considering the best interests factors set forth in section 61.13(3)(a)-(t), Florida Statutes, the court found that 12 factors were either not an issue or were neutral, giving no preference to either parent. Six factors weighed in favor of appellant. Only one factor weighed in favor of placement with the mother. "Weighing the evidence regarding the factors, and [taking] the best interest of the

3

child into consideration," the court concluded that the "evidence supports the child being with the father during the school year." However, the court then held that "[a]fter [the child] completes elementary school, the parents will rotate roles, with the mother becoming the school parent and the father becoming the non-school parent. This will result in each parent having roughly the same amount of time in the school parent role, given that the child was not primarily with either parent during the first six years of the child's life."

We find the trial court's entry of this prospective change in residence (1) was unsupported by the record and was contrary to the court's finding that residing with appellant was in the child's best interests; (2) was based on an impermissible prospective-based analysis; and (3) violated appellant's due process rights.

First, the trial court failed to find that this prospective change in timesharing was in the child's best interests, nor was there any record evidence that would have supported such a finding. After weighing the evidence and the best interests factors set forth in section 61.13(3)(a)-(t), the court concluded that it was in the child's best interests to live with appellant in Orlando during the school year. Contrary to this best interests determination, the court found that the child should move to Tallahassee to be with the mother when she begins middle school because doing so would give the parents equal time with the child. The mere fact that the parents

4

would get equal time does not mean that the move would be in the child's best interests.

In Bainbridge v. Pratt, 68 So. 3d 310, 314 (Fla. 1st DCA 2011), this court noted there is currently no statutory presumption for or against rotating timesharing arrangements. However, there are 7 factors set forth in case law that cut in favor of rotating timesharing: (1) the child is older and mature; (2) the child is not yet in school; (3) the parents live near each other; (4) the child prefers rotating timesharing; (5) the rotation will not have a disruptive effect on the child; (6) the periods of time spent with each parent are reasonable; (7) the periods of time with each parent are related to divisions in the child's life, such as the school year; and (8) severe acrimony and ill-will exists between the parents.

Here, there is no evidence suggesting that these factors are present, with the exception of number 7, that the move is coordinated with the child's school schedule. The trial court's finding that the child should move to be with the mother in Tallahassee when she enters middle school is contrary to the court's finding that it was in the child's best interests to live with appellant, and there was no evidence presented that would have supported a finding that living with the mother was in the child's best interests. Thus, the trial court abused its discretion in ordering the move to Tallahassee for middle school. Schwieterman v. Schwieterman, 114 So. 3d 984, 987 (Fla. 5th DCA 2012) (finding a trial court has broad discretion in

5

ordering timesharing, and its decision should be affirmed if it is supported by competent, substantial evidence and is not an abuse of discretion).

Second, we find the trial court's prospective-based analysis was impermissable. In a similar case, Arthur v. Arthur, 54 So. 3d 454 (Fla. 2010), as revised on denial of reh'g (Feb. 10, 2011), the supreme court found a trial court erred in authorizing the wife to permanently relocate with the parties' 16-month-old child when the child turned three years old. The Arthur court reasoned that "[s]uch a 'prospective-based' analysis is unsound. Indeed, a trial court is not equipped with a 'crystal ball' that enables it to prophetically determine whether future relocation is in the best interests of a child." Id. at 459. "Because trial courts are unable to predict whether a change in any of the statutory factors will occur, the proper review of a petition for relocation entails a best interests determination *at the time of the final hearing,* i.e. a 'present-based' analysis." Id.

Similarly here, the trial court was not equipped with a crystal ball that would enable it to determine whether it would be in the best interests of the child, who is currently in first grade, to relocate over 300 miles away to live with her mother when she begins middle school. The relevant determination is the best interests of the child at the time of the final hearing. At the time of the final hearing, the court determined that it was in the child's best interests to live with appellant in Orlando

6

and go to school there. Thus, the trial court abused its discretion when it ordered that she would relocate to live with her mother upon finishing elementary school.

Third, it is well-established that "a party's due process rights are violated when a party is not given notice that the trial court would consider an issue or opportunity to be heard on the matter." Bainbridge, 68 So. 3d at 314. In Bainbridge, this court made clear that "a trial court may not order an annual, rotating time-sharing plan where neither parent requested such a plan in the pleadings, nor argued for the plan at the final hearing." Id.

Here, the parties stipulated that the issues before the court were whether the child should live primarily with the father and go to school in Orlando, or whether she should live with the mother and attend school in Tallahassee, and how much time the child should spend with the "non-school" parent during school breaks. Appellant was not given notice or opportunity to be heard on whether it would be in the child's best interests to move from Orlando to Tallahassee to live with the mother when she starts middle school. Thus, the trial court violated appellant's due process rights by imposing this prospective change in residence.

For the reasons discussed above, we find the trial court's order that the child should move to live with her mother when she begins middle school was an abuse of discretion, unsupported by the record, and violated appellant's due process rights. Thus, we REVERSE and REMAND.

7

ROBERTS, C.J., and RAY, J., CONCUR.